Filed 11/8/13  In re K.B. CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re K.B., a Person Coming Under the Juvenile Court Law. | |
| ORANGE COUNTY SOCIAL SERVICES AGENCY,<br><br>    Plaintiff and Respondent,<br><br>            v.<br><br>K.B. et al.,<br><br>    Defendants and Appellants. | G048198<br><br>(Super. Ct. No. DP021412)<br><br>O P I N I O N |

Appeal from a postjudgment order of the Superior Court of Orange County, Deborah C. Servino, Judge.  Affirmed.

Jacob I. Olson, under appointment by the Court of Appeal, for Defendant and Appellant K.B.

Marsha F. Levine, under appointment by the Court of Appeal for Defendant and Appellant R.L.

Nicholas S. Chrisos, County Counsel, Karen L. Christensen and Aurelio Torre, Deputy County Counsel, for Plaintiff and Respondent.

No appearance for the Minor.

*          *          *

K.B. (father) and R.L. (mother), parents of K.B. (the child), appeal from an order issued after the permanency planning hearing that chose adoption as the permanent plan for the child and terminated father's and mother's parental rights. (Welf. & Inst. Code, § 366.26; unless otherwise indicated, all further statutory references are to this code). Both appellants contend the juvenile court erred in concluding the parent-child relationship exception to terminating parental rights (§ 366.26, subd. (c)(1)(B)(i)) did not apply in this case. In addition, father argues the order must be reversed because the lower court failed to provide proper notice as required under the Indian Child Welfare Act (25 U.S.C. § 1901 et seq.; ICWA). Finding no error, we affirm the juvenile court's order.

## FACTS AND PROCEDURAL BACKGROUND

This case began in August 2010, when the Los Angeles Department of Child and Family Services (LADCFS) filed a dependency petition on behalf of the child, born in June 2009, arising from the parents' history of alcohol abuse and domestic violence. At the jurisdictional hearing, the parents entered no contest pleas to the petition and the juvenile court found the failure to protect (§ 300, subd. (b)) allegation true. The court placed the child with mother under a family maintenance plan, while father was authorized monitored visitation plus referrals to participate in reunification programs and testing. Reports prepared in January and March 2011 noted father had participated in weekly visits with the child without any problems.

Shortly after a March status review hearing, LADCFS learned the child had suffered a six-inch long burn on his chest and mother was found to be intoxicated while

2

caring for him. LADCFS removed him from her custody and filed a subsequent petition. The petition was sustained and the child placed with a maternal aunt and uncle. The court ordered that both parents receive reunification services. Since both parents then resided in Orange County, the court ordered the proceedings transferred to Orange County. An order accepting the transfer was entered in July.

In late September 2011, custody of the child was placed with his maternal grandparents. A status review hearing was conducted in December. The Orange County Social Services Agency (SSA) reported both parents had visited with the child twice a week and the maternal grandparents noted "the child loves to see his parents." The assigned social worker described each parent's compliance with their reunification plans as moderate.

In May 2012, the social worker reported both parents continued to consistently visit with the child and had one overnight stay with him that went well. In a report for the twelve-month status review hearing, SSA described the parents' compliance with their reunification plans as substantial and noted it was probable the child could be returned to their care at the eighteen-month review. Because of the parents' progress, on May 3, 2012, the SSA placed the child with the parents for a 60-day trial stay.

The trial stay did not last long. SSA learned mother returned the child to the maternal grandparents on May 10. Mother initially told the social worker the child was having some difficulty adjusting to the new living arrangement. She later admitted taking the child to the grandparents because father wanted her to drink with him and when she refused, he became angry and struck her. Mother reported the incident to the police only after the social worker pressed her to do so.

During the month of June mother failed to visit the child while father visited him only once. At a July status review hearing, the juvenile court terminated

3

reunification services for father. However, it gave mother one "last opportunity" to complete her service plan.

Before the eighteen-month review hearing, both parents continued to regularly visit with the child, except that father missed some visits due to work or illness. In September, mother missed tests for drug and alcohol use and began drinking again. In October, the court terminated mother's service plan and scheduled the case for a permanency planning hearing.

Shortly thereafter, the child was again placed in the home of his maternal aunt and uncle. The couple expressed a willingness to adopt him. After the change in placement, the parents' visits with the child became sporadic. Mother testified she entered a residential substance abuse program. She had three visits with the child in December, one in January 2013, and another in February. During the February 2013 permanency planning hearing, mother claimed she had spoken with the child once a week since October. Between October 2012 and February 2013, father had a single one-hour visit with the child. At the permanency planning hearing, father testified he missed visits because of illnesses that resulted in his being hospitalized.

The permanency planning hearing began February 15, 2013. After receiving SSA's report, plus testimony from parents and the maternal grandmother, and argument, the juvenile court found the child adoptable. In addition, it tentatively ruled the parent-child relationship exception applied. The court continued the hearing for a month to consider which alternate permanent plan would be appropriate.

But at the next hearing, the court reversed its decision on the appropriate permanent plan. Based on a review of her "notes and the relevant case law," the judge found "the parents have not shown . . . that the beneficial parent-child relationship exception applies . . . ." As to mother, the court found her visitation was consistent "until October [2012]" when she "stopped visitation for . . . more than 30 days," with "even more sporadic [visitation in] December, January and February." It rejected mother's

4

claim the lack of visitation was due to the distance between her residential facility and the caretakers' home because she "could have contacted the social worker" to arrange visits.

As for father, even assuming it could find his visitation was consistent, the court concluded "the visits" were more akin to "that . . . of a friendly visitor or relative than of the parental" nature, and thus "d[id] not meet th[e] threshold of the second prong." The court then concluded adoption was in the child's best interest and terminated mother's and father's parental rights.

DISCUSSION

*1. The Parent-Child Relationship Exception*

"By the time of a section 366.26 hearing, the parent's interest in reunification is no longer an issue and the child's interest in a stable and permanent placement is paramount. . . . Adoption is the Legislature's first choice because it gives the child the best chance at such a commitment from a responsible caretaker." (*In re Jasmine D.* (2000) 78 Cal.App.4th 1339, 1348.) Here, neither father nor mother challenge the juvenile court's finding that clear and convincing evidence support a conclusion the child was adoptable.

Rather, the parents argue they each satisfied the requirements for the parent-child exception under section 366.26, subdivision (c)(1)(B)(i). "Once the court determines the child is likely to be adopted, the burden shifts to the parent to show that termination of parental rights would be detrimental to the child under one of the exceptions listed . . . ." (*In re C.F.* (2011) 193 Cal.App.4th 549, 553.) "Overcoming the statutory preference for adoption and avoiding the termination of parental rights requires the parent to show both that he or she has maintained regular visitation with the child and that the child would benefit from continuing the relationship. [Citation.]" (*In re Marcelo B.* (2012) 209 Cal.App.4th 635, 643

The parties acknowledge appellate courts disagree on the appropriate standard of review concerning a ruling on the parent-child exception. "Most courts have applied the substantial evidence standard" (*In re K.P.* (2012) 203 Cal.App.4th 614, 621), while "at least one court has concluded that it is properly reviewed for abuse of discretion" (*ibid.*; see *In re Jasmine D., supra,* 78 Cal.App.4th at p. 1351). A third approach "incorporates both . . . standards of review." (*In re K.P., supra,* 203 Cal.App.4th at p. 621.) First, "whether a beneficial parental . . . relationship exists . . . is, because of its factual nature, properly reviewed for substantial evidence." (*Id.* at p. 622.) Second, "whether the existence of that relationship . . . constitutes 'a compelling reason for determining that termination would be detrimental to the child[,]' . . . 'calls for the juvenile court to determine the *importance* of the relationship in terms of the detrimental impact that its severance can be expected to have on the child and to weigh that against the benefit to the child of adoption,' is . . . reviewed under the deferential abuse of discretion standard." (*Ibid.*; see also *In re Bailey J.* (2010) 189 Cal.App.4th 1308, 1314-1315.)

We need not determine which of these approaches is most appropriate since under any of them, the juvenile court properly rejected the parent-child exception in this case. The court expressly found mother failed to maintain regular visitation with the child and expressed some doubt that father satisfied this requirement as well. At times during the dependency proceedings both parents were consistent in visiting the child. But during other periods, they failed to do so. After the unsuccessful 60-day trial stay in May 2012, mother did not see the child at all the following month while father visited him only once. When the juvenile court scheduled the permanency planning hearing, both mother and father failed to consistently visit the child. Mother did not see him at all during the remainder of October or in November. She visited him only three times in December and once each in January and February 2013. During the same time span father saw the child on a single occasion for an hour. "'Sporadic visitation is insufficient

to satisfy the first prong . . . ' of the exception." (*In re Marcelo B., supra,* 209 Cal.App.4th at p. 643; see also *In re Elizabeth M.* (1997) 52 Cal.App.4th 318, 324 ["While the mother's visitation . . . had been consistent and positive during a previous period of time, during the six months preceding the selection and implementation hearing it had been sporadic"].)

Nor has either parent established the court erred in finding the exception's second requirement was absent. "A beneficial relationship 'is one that "promotes the well-being of the child to such a degree as to outweigh the well-being the child would gain in a permanent home with new, adoptive parents." [Citation.] The existence of this relationship is determined by "[t]he age of the child, the portion of the child's life spent in the parent's custody, the 'positive' or 'negative' effect of interaction between parent and child, and the child's particular needs."'" (*In re Marcelo B., supra,* 209 Cal.App.4th at p. 643.) "Satisfying the second prong requires the parent to prove that 'severing the natural parent-child relationship would deprive the child of a *substantial*, positive emotional attachment such that the child would be *greatly* harmed. [Citations.] A biological parent who has failed to reunify with an adoptable child may not derail an adoption merely by showing the child would derive *some* benefit from continuing a relationship maintained during periods of visitation with the parent.'" (*Ibid.*)

While the child spent much of his short life with his parents, the evidence reflects that interaction was not beneficial to him. This proceeding arose from the parents' problems with alcohol abuse and domestic violence. Initially left in mother's care, the juvenile court eventually took custody from her after the child was found to have been injured and mother appeared to be intoxicated. A later trial stay with both parents was a spectacular failure when the parents, after nearly two years of family maintenance and reunification services, immediately resorted to the behaviors that initially lead to this proceeding. Even after mother was given one last opportunity to reconcile with the child, she was unable to stay sober for more than a few months.

7

Simply because the child enjoyed his visits with both parents is not enough to find the parent-child exception applies. "Evidence that a parent has maintained "'frequent and loving contact" is not sufficient to establish the existence of a beneficial parental relationship.'" (*In re Marcelo B., supra,* 209 Cal.App.4th at p. 643.) Thus, we conclude the juvenile court properly rejected the parents' request that it find the parent-child exception applied in this case.

## 2. *The ICWA*

Under the ICWA, "[i]n any involuntary proceeding in a State court, where the court knows or has reason to know that an Indian child is involved, the party seeking the foster care placement of, or termination of parental rights to, an Indian child shall notify the parent or Indian custodian and the Indian child's tribe . . . of the pending proceedings and of their right of intervention." (25 U.S.C. § 1912(a); see also § 224.1, subd. (d) [under California law, "a 'child custody proceeding' within the meaning of . . . the Indian Child Welfare Act" includes "a proceeding for . . . termination of parental rights"].)

When this case was initially filed, father told LADCFS that he might have some Indian ancestry on his mother's side. Since the child was initially placed in mother's custody, the Los Angeles County Juvenile Court concluded LADCFS did not have to comply with the ICWA's notice requirements. (See *In re J.B.* (2009) 178 Cal.App.4th 751, 758 [the ICWA does not apply to "a proceeding for placement with a *parent*"].) Subsequently, the child was removed from mother's custody as well, but the juvenile court did not amend its order concerning ICWA compliance.

Upon the case's transfer to Orange County, SSA reported that "Los Angeles County Juvenile Court found that the [ICWA] does not apply." In subsequent reports, SSA did note "father indicated that he has American Indian Ancestry," but never

8

attempted to comply with the ICWA and the Orange County Juvenile Court also never ordered SSA do so.

On appeal, father argues the failure to comply with the ICWA's notice requirements requires reversal of the juvenile court's termination of parental rights order. Initially, SSA conceded father's argument had merit, but urged this court to limit the reversal solely to ensure compliance with the ICWA and, in the event the child is either not found to be an Indian child or no tribe claims him as a member, reinstate the order terminating appellant's parental rights. (See *In re Nikki R.* (2003) 106 Cal.App.4th 844, 855-856.)

But in a footnote SSA also mentioned that while this appeal was pending it had initiated compliance with the laws governing Indian children. Recently, SSA filed a motion in this court requesting we take additional evidence or augment the record with eight exhibits consisting of juvenile court minute orders, an SSA interim review report, and documentation establishing compliance with the notice requirements of the ICWA and state law. SSA contends "[t]he attached reports and additional documents resolve [f]ather's ICWA concerns." This court issued an order granting SSA's motion and affording appellants an opportunity to file supplemental briefs responding to the motion. Neither parent has filed a response.

Generally, this court has authority to receive additional evidence (Code Civ. Proc., § 909) and augment the appellate record (Cal. Rules of Court, rules 8.410(b) & 8.155(a); see *In re Christopher I.* (2003) 106 Cal.App.4th 533, 562). But in *In re Zeth S.* (2003) 31 Cal.4th 396, the Supreme Court overturned a decision by this court that had reversed an order terminating parental rights based on statements appearing in an attorney's unsworn letter brief. Applying the general rule that "'an appeal reviews the correctness of a judgment as of the time of its rendition, upon a record of matters which were before the trial court for its consideration'" (*id.* at p. 405), *Zeth S.* concluded "consideration of postjudgment evidence of changed circumstances in an appeal of an

9

order terminating parental rights, and the liberal use of such evidence to reverse juvenile court judgments and remand cases for new hearings, would violate both the generally applicable rules of appellate procedure, and the express provisions of section 366.26 which strictly circumscribe the timing and scope of review of termination orders, for the very purpose of expediting the proceedings and promoting the finality of the juvenile court's orders and judgment[]" (*id.* at p. 413, fn. omitted).

Nonetheless, in a later decision, *In re Josiah Z.* (2005) 36 Cal.4th 664, the Supreme Court held the children's appellate counsel could move to dismiss an appeal filed by their trial attorney "based on [appellate counsel's] analysis of the[ children's] best interests." (*Id.* at p. 673.) *Josiah Z.* distinguished *Zeth S.*, noting it concerned "an appellate court . . . solicit[ing] postjudgment evidence in order to reopen and reconsider trial court findings and reverse the trial court's judgment." (*In re Josiah Z., supra,* 36 Cal.4th at p. 676.)

Subsequent appellate decisions have granted requests to take additional evidence or augment the appellate record in juvenile dependency appeals from orders terminating parental rights to rebut claims the juvenile court failed to comply with the ICWA. *In re A.B.* (2008) 164 Cal.App.4th 832 affirmed a parental rights termination order after granting a child welfare agency's motion to augment the appellate record with postjudgment evidence to overcome a claim the juvenile court initially failed to comply with the ICWA. *A.B.* distinguished its ruling from *Zeth S.* noting, "the Agency submitted to the juvenile court a certified copy of a court record . . ., which is subject to judicial notice. . . . Further, the Agency did not seek to augment the record with evidence pertaining to the substantive merits of the juvenile court's termination of parental rights, and the evidence cannot be used to reverse the judgment on substantive grounds. The ICWA inquiry issue is distinct from the substantive merits of the court's ruling . . . . Also, admission of the evidence to affirm the judgment would promote the finality of the judgment and prevent further delay." (*In re A.B., supra,* 164

10

Cal.App.4th at p. 841; see also *In re E.W.* (2009) 170 Cal.App.4th 396, 403, fn. 2 [granting child welfare agency's motion to take evidence supporting ICWA compliance because "this evidence will assist in supporting the juvenile court's order and will not create unnecessary delay on appeal"].)

We conclude the holdings in *Joziah Z.*, *A.B.*, and *E.W.* apply to these appeals. The exhibits submitted by SSA consist of minute orders where the juvenile court reappointed counsel to represent each parent, contacted father and his relatives and learned his mother had "Choctaw Indian ancestry." SSA sent notices with return receipt requested to the Bureau of Indian Affairs and three Choctaw tribes; Choctaw Nation of Oklahoma, Jena Band-Choctaw, and Mississippi Band of Choctaw Indians. Each of the tribes responded. Two tribes reported that neither the child nor his relatives were members or eligible for membership in the tribe. The third reported it was "unable to establish Indian heritage." At a later periodic review hearing, the juvenile court admitted SSA's interim report documenting its efforts to comply with the ICWA's notice requirements and the responses received from the respective tribes, and based on this evidence found the ICWA does not apply to this case.

As noted, we offered both father and mother an opportunity to respond to SSA's motion and neither did so. Given the nature of the new evidence and the fact that its acceptance will promote finality of the case by eliminating further delay, we conclude the record shows there has been full compliance with the ICWA and therefore reject father's contention.

DISPOSITION

The postjudgment order is affirmed.

                          RYLAARSDAM, ACTING P. J.

WE CONCUR:


BEDSWORTH, J.


MOORE, J.