Filed 2/22/16  In re Ashton B. CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| In re the Matter of ASHTON B. et al., <br><br> Minors. <br> ───────────────── <br> SAN LUIS OBISPO DEPARTMENT OF SOCIAL SERVICES, <br><br>    Plaintiff and Respondent, <br><br> v. <br><br> DANIEL B. and B.B., <br><br>    Defendant and Appellant. | 2d Civil No. B264160 <br> (Super. Ct. No. JV51513) <br> (San Luis Obispo County) |

Daniel B., the presumed father of Ashton B., appeals from the May 7, 2015 order terminating his parental rights and freeing three-year-old Ashton for adoption. (Welf. & Inst. Code, § 366.26.)[1]  Daniel contends that San Luis Obispo County Department of Social Services (DSS) failed to comply with the inquiry and notice provisions of the Indian Child Welfare Act (ICWA) (25 U.S.C. § 1901 et seq) and California ICWA related statutes (§ 224 et seq.).  We affirm.

B.B., the biological mother of Ashton and Ashton's half-siblings, Nathan P. (age 12), Tristan P. (age 11), Grayson P. (age nine), S.P. (age seven), Jayden P. (age five),   appeals from the order terminating her parental rights as to Ashton, Jayden,

---

[1] All statutory references are to the Welfare & Institutions Code unless otherwise stated.

Nathan, and S.[2]   (Welf. & Inst. Code, § 366.26.)  Pursuant to *In re Phoenix H.* (2009) 47 Cal.4th 835, 844-846, we dismiss mother's appeal.

*Factual and Procedural History*

Mother has a long history of domestic violence and substance/alcohol abuse that has jeopardized the safety and well being of Ashton and her half-siblings.[3]  On March 18, 2013, DSS filed a petition for failure to protect (§ 300, subd. (b)) and serious emotional damage (§ 300, subd. (c)).  At the combined jurisdictional/disposition hearing, mother admitted that Daniel beat her in front of the children and threatened to kill her and the children.  On one occasion, Daniel, while drunk and under the influence of cocaine, beat mother for three hours in front of Jayden.  Mother reunited with Daniel after he was released from jail, only to be beaten again.

At the March 19, 2013 detention hearing, Daniel stated that he may have ancestry with the Cherokee or Shoshone tribes.  DSS mailed ICWA-030 notices to the tribes, the Bureau of Indian Affairs, and U.S. Department of Interior listing the familial information that it had.  On November 14, 2013, the trial court found that ICWA did not apply.  (Cal. Rules of Ct., rule 5.482(d).)

The trial court sustained the petition, removed the children, and ordered reunification services. At the 6-month and 12-month review hearings, DSS reported that mother was not following through with services or addressing the children's behavioral issues.  Mother was disengaged at visits and had relapsed twice and consumed alcohol in the presence of the children.

In 2014, the children were placed back in the home but conditions quickly deteriorated.  On April 18, 2014, DSS filed a section 387 supplemental petition to remove the children after mother left Nathan and Tristan in Daniel's care in violation of a no-contact order.  The trial court ordered mother to have no contact with Daniel and warned that violation of the order would result in the immediate termination of services.  DSS

---

[2]  Parental rights were not terminated as to Tristan and Grayson.

[3] Gray P., who has a history of substance abuse, is the presumed father of Nathan, Tristan, Grayson, S., and Jayden.   Daniel, the presumed father of Ashton.

later filed a JV-180 petition to terminate services when mother resumed living with Daniel.

At the 18-month review hearing, the trial court found that mother's domestic violence and substance abuse was an on-going problem. The court terminated services and set the matter for a section 366.26 hearing. Mother filed a petition for extraordinary writ relief (Cal. Rules of Court, rule 8.452) which we denied in an unpublished opinion on January 21, 2015. (B259315.)[4]

*Section 366.26 Hearing*

Before the section 366.26 hearing, mother filed a section 388 petition to return the children on the ground that Daniel was in custody on a new act of domestic violence and mother was attending counseling. The trial court denied the section 388 petition at the 366.26 hearing. Daniel argued that Ashton should be placed with a paternal great aunt (C.W.B.) who had never met Ashton. The trial court found that Ashton and three half-siblings (Nathan, Jayden, and S.) were adoptable and terminated parental rights.

*Mother's Appeal*

Mother's counsel filed an opening brief informing us that she was unable to find an arguable issue and requesting that we undertake review pursuant to *In re Sade C.* (1996) 13 Cal.4th 952 and *In re Phoenix H., supra,* 47 Cal.4th 835. On October 8, 2015, mother filed a supplemental brief contending, among other things, that her First Amendment, Ninth Amendment, and due process rights were violated. Mother's assertions are not supported by citation to the record or case authority. Neither mother's brief nor our independent review of the record reveals any arguable issues. Accordingly, we dismiss mother's appeal. (*In re Sade C., supra,* 13 Cal.4th at p. 994; *In re Phoenix H., supra,* 47 Cal.4th at p. 846.)

---

[4]We have taken judicial notice of the record in B259315.

*ICWA*

Father argues that DSS failed to comply with its ICWA duty to inquire about father's Indian heritage.[5]  Federal and state law requires that proper notice be given to Indian tribes so the tribes can identify Indian children from tribal records and participate in the dependency proceeding.  (*In re K.M.* (2009) 172 Cal.App.4th 115, 118-119.)  Under California law, the trial court and DSS "have an affirmative and continuing duty to inquire whether a child . . . is or may be an Indian child in all dependency proceedings. . . ."  (§ 224.3, subd. (a); see *In re I.B.* (2015) 239 Cal.App.4th 367, 375-376.)

Shortly after the dependency petition was filed in 2013, Daniel claimed Cherokee and Shoshone heritage.  DSS investigated and mailed ICWA notices to the identified tribes.  None of the tribes declared Ashton a member or eligible for tribal membership based on the information provided by Daniel and his family.

Daniel's Indian heritage allegedly stems from his biological grandfather, Homer B., who died 15 to 20 years ago.  Homer's ex wife (Ashton's paternal great grandmother) Marilyn T., divorced Homer fifty years ago and had no further contact with the family.  In April 2013, Marilyn T. told DSS that Homer's side of the family had Indian heritage and provided Homer's birth date and place of death.  All of that information was provided the tribes when the tribes were re-noticed.  Marilyn T. stated that if she came up with any names or contact information, she would call back.

Daniel argues that his paternal great aunt, C.J.B., who has never met Ashton, might have information regarding her Indian heritage.  We have taken judicial notice of an addendum to a  September 24, 2015 Court Report which reflects that Brown was interviewed by two social workers and was extremely uncooperative.  (Evid. Code, §§ 452; 459 , subd. (a); see e.g., *In re Z.N.* (2009) 181 Cal.App.4th 282, 298-300; *In re*

---

[5] At the March 19, 2013 detention hearing, mother and Gray P., the presumed father of Nathan, Tristan, Grayson, S. and Jayden, declared they had no American Indian ancestry. At the April 24, 2013 jurisdiction/disposition hearing, Daniel stated that he may be a member or eligible for membership in a Cherokee or Shoshone tribe.

4

*Justin S.* (2007) 150 Cal.App.4th 1426, 1429, fn. 2.) When DSS first contacted C.J.B. in 2013, C.J.B. refused to acknowledge that Ashton was biologically related to her or Daniel. Brown said that she would not consider anything unless Daniel and Ashton had a paternity test. The report addendum states that after reunification services were terminated, C.J.B. "suddenly wanted placement of Ashton. . . . On October 7, 2015, this social worker spoke with Ms. [B.]. Ms [B.] stated to the social worker that her family does have Indian ancestry and that she does have names, birthdates, etc. of her family members, as she has been doing ancestry research. She stated that she did not have the needed information in front of her. She then became angry and accusatory and changed the topic of conversation and wanted to discuss placement of Ashton and the history of the case. This social worker re-directed the conversation and asked that she please call this social worker back with names, birthdates, etc. of family members that may have ICWA ancestry. . . This social worker impressed upon Ms. [B.] the importance and urgent matter of this information and requested that she call back as soon as possible. Ms. [B.] stated that she understood and agree to call back with the relevant information"

The social worker called C.J.B. on October 14, 2015 and left a message. The report addendum states that "this social worker has never received a call back from Ms. [B.]. While disappointing, that is not unexpected as Ms. B. has been difficult and uncooperative throughout the life of this case." The social worker also contacted Marilyn T. (Ashton's paternal great grandmother) regarding Ashton's Indian heritage and that Marilyn T. had no new information. Appellant claimed that "Aunt Cheryl" had information about his Indian heritage but the phone number provided was disconnected and no longer in service.

Daniel contends that DSS had an ICWA duty to further investigate even though his relatives were uncooperative or had no further information. DSS is not required to "cast about" for family history or the names of possible tribal units. (*In re Levi U.* (2000) 78 CalApp.4th 191, 199.) The paternal great aunt said she would provide ICWA related information but did not follow through. Where a relative is hostile and refuses to give additional information, the duty to inquire ends. (*In re K.M., supra,* 172

5

Cal.App.4th at p. 119.) "ICWA does not require further inquiry based on mere supposition. [Citation.]" (*Ibid*; see *In re Hunter W.* (2011) 200 Cal.App.4th 1454, 1468 [mother's claim of possible Indian heritage through deceased paternal grandparent too vague and speculative]; *In re J.D.* (2010) 189 Cal.App.4th 118, 125 [grandmother's claim of Indian ancestry unrelated to any specific tribe was too vague and speculative]; *In re Z.N.* (2009) 181 Cal.App.4th 282, 298 [mother's belief that her grandmother "was Cherokee" (tribe unidentified) did not trigger duty to notify tribes]; *In re O.K.* (2003) 106 Cal.App.4th 152, 155 [ICWA did not apply when minor's grandmother said minor "may have Indian in him" but could not identify a particular tribe or nation].)

DSS did all that was reasonably expected of it to meet its ICWA obligation to the child, the family, the tribes, and the trial court. "Parents unable to reunify with their children have already caused the children serious harm; the rules do not permit them to cause additional unwarranted delay and hardship without any showing whatsoever that the interests protected by ICWA were implicated in any way." (*In re K.M., supra,* 172 Cal.App.4th at p. 120.)

Assuming, arugendo, there was some error or omission in the ICWA investigation, it was harmless. The tribes' responses to the ICWA notices indicate that Ashton is not a member of any federally recognized tribe or eligible for membership in a tribe. Daniel asserts that the judgment should be conditionally reversed and the matter remanded for a new round of ICWA notices. (See e.g., *Justin L. v. Superior Court* (2008) 165 Cal.App.4th 1406, 1410.) That would be an empty formality and a waste of scarce judicial resources. (*In re E.W.* (2009) 170 Cal.App.4th 396, 402.; *In re I.W.* (2009) 180 Cal.App.4th 1517, 1530 [deficiencies in an ICWA notice harmless if dependent child is not an Indian child].) There is no information in the record or the superior court file to suggest that Ashton has Indian ancestry. Delaying Ashton's adoption "for an empty exercise with a pre-ordained outcome, especially where that exercise does nothing concrete to further the purposes of ICWA" would be an exercise in futility. (*In re E.W., supra,* 170 Cal.App.4th at p. 402.)

6

*Conclusion*

Mother's appeal from the order terminating parental rights is dismissed. (*In re Sade C., supra,* 13 Cal.4th at p. 994; *In re Phoenix H., supra,* 47 Cal.4th at p. 846.) With respect to Daniel, the judgment (order terminating parental rights) is affirmed.

NOT TO BE PUBLISHED.


YEGAN, J.


We concur:


GILBERT, P.J.


PERREN, J.


7

Linda Hurst, Judge

Superior Court County of San Luis Obispo

_____

Megan Turkat Schim, under appointment by the Court of Appeal, for Daniel B., Appellant.

Pamela Deavours, under appointment by the Court of Appeal, for B.B., Appellant.

Rita Neal, County Counsel, County of San Luis Obispo; Leslie H. Kraut, Deputy County Counsel, for Respondent.