Filed 3/2/22  In re Robert C. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FIFTH APPELLATE DISTRICT

|  |  |
|---|---|
| In re ROBERT C., a Person Coming Under the Juvenile Court Law. | |
| KERN COUNTY DEPARTMENT OF HUMAN SERVICES, Plaintiff and Respondent, v. BRIAN C. et al., Defendants and Appellants. | F083377 (Super. Ct. No. JD141774-00) **OPINION** |

## THE COURT[*]

APPEAL from an order of the Superior Court of Kern County.  Christie Canales Norris, Temporary Judge.  (Pursuant to Cal. Const., art. VI, § 21.)

S. Lynne Klein, under appointment by the Court of Appeal, for Defendant and Appellant Brian C.

Elaine Forrester, under appointment by the Court of Appeal, for Defendant and Appellant S.L.

Margo A. Raison, County Counsel, and Judith M. Denny, Deputy County Counsel, for Plaintiff and Respondent.

-ooOoo-

---

[*]    Before Peña, Acting P.J., Meehan, J. and DeSantos, J.

Brian C. (father) appeals from an order terminating parental rights to his one-year-old son, Robert C., under Welfare and Institutions Code section 366.26.[1] Father contends the juvenile court committed reversible error by relying on findings in a prior dependency case to conclude that the Indian Child Welfare Act of 1978 (25 U.S.C. § 1901 et seq.; (ICWA)) did not apply without proper inquiry. S.L., Robert's mother (mother), joins. Respondent concedes the juvenile court may have erred and proposes a conditional reversal to ensure ICWA compliance. We affirm.

**PROCEDURAL AND FACTUAL SUMMARY**

A. *Initial Proceedings*

In December 2020, the Kern County Department of Human Services (department) received a referral alleging mother gave birth to Robert by emergency Caesarean section at 35 weeks gestation. Mother tested positive for amphetamine, methamphetamine, and cannabis. Robert was transferred to a children's hospital and admitted to the neonatal intensive care unit in critical condition.

Mother has a history of substance abuse dating back to 2005 and alcohol abuse dating back to 2009. In addition, she and father have an extensive child welfare history. Mother had five older children at the time of Robert's birth—Joshua T., A.K., Jr., Ruby C., M.C., and Brian C., Jr. They had all been removed from her care in two separate dependency proceedings and permanent plans had been ordered. Joshua was in a legal guardianship, Brian C., Jr., and M.C. were adopted and A.K., Jr. and Ruby were in long-term foster care. Father also had five children prior to Robert—Brian C., Jr., M.C., and Ruby through his relationship with mother, and B.C. and N.G. by another relationship. His children were removed from his custody in five separate dependency matters and had all been adopted except for Ruby.

---

[1] Statutory references are to the Welfare and Institutions Code.

2

In January 2021, the department filed a petition under section 300, subdivision (b)(1) (failure to protect), alleging mother's substance abuse placed Robert at a substantial risk of harm. The petition further alleged under section 300, subdivision (j) (abuse of sibling) that the parents abused or neglected Robert's siblings, placing him at risk for similar abuse or neglect. Specifically, the petition alleged Joshua was removed from mother's custody in September 2009 in Sacramento County because of mother's alcohol abuse and domestic violence. Joshua was placed with his father and mother was provided reunification services. Joshua was detained again in February 2011; services were terminated and he was placed in a legal guardianship in August 2011. In August 2014, siblings A.K., Jr. and Ruby were removed from mother and father because of inadequate housing. The juvenile court ordered family maintenance services for the parents in December 2014 but removed the children again in March 2015 because of the parents' substance abuse and failure to provide appropriate medical care. The court provided the parents reunification services but terminated them at the six-month review hearing. In October 2020, the court terminated parental rights and the children's adoption was pending.

The department took Robert into protective custody and placed him with foster parents upon his release from the hospital. He remained in their care throughout these proceedings.

The parents were present at the detention hearing on January 19, 2021. The juvenile court ordered Robert detained and ordered twice weekly supervised visitation for the parents. The court noted the parents submitted an ICWA-020 form ("Parental Notification of Indian Status") and father indicated he believed he had "Choctaw and Blackfoot" heritage and that he previously advised the court of his heritage in a prior dependency case. The court asked if the department had inquired about Robert's Indian heritage and received any responses. County counsel stated she believed there had been prior findings that the ICWA did not apply but said she would check the file and inquire.

3

Father's attorney said he represented father in the prior dependency cases and believed father identified the same tribes in those cases. The court continued the hearing to January 21 and asked the social worker to determine whether the Choctaw and Blackfeet tribes were notified in the prior dependency proceedings and how they responded.

On January 21, 2021, county counsel advised the juvenile court that notices of the dependency proceedings were sent to the Choctaw and Cherokee tribes and a finding was made in July 2009 that the ICWA did not apply to father. In 2013, additional inquiries and notices were sent to the Choctaw, Cherokee and Blackfeet tribes. In August 2016, the juvenile court found the ICWA did not apply to father. The court asked the social worker to include in the department's jurisdictional report the names of the tribes noticed in the prior dependency proceedings and their responses. The court wanted to make sure that everyone was noticed so it could be confident of its finding in this case. The court set a jurisdiction/disposition hearing for March 9, 2021.

B.      *Jurisdiction and Disposition Hearings*

In its report for the jurisdictional hearing regarding the ICWA, the department reported that in the 2009 dependency case regarding B.C., it received responses from the Choctaw Nation of Oklahoma, the Mississippi Band of Choctaw, the Jena Band of Choctaw Indians, the Blackfeet Tribe, and the Bureau of Indian Affairs. On July 20, 2009, the juvenile court found the ICWA did not apply to father. In November 2011, a petition was filed on behalf of B.C., Brian C., Jr., and N.G. In February 2012, the juvenile court asked father about his Indian heritage. Father's attorney stated the ICWA notice had been provided in previous cases. The court asked the department to research the ICWA notification in the previous cases and on February 29, 2012, the court found the ICWA did not apply. On September 16, 2014, the department filed responses from the Mississippi Band of Choctaw Indians and the Choctaw Tribe in Ruby's case. On December 8, 2014, the court found the ICWA did not apply. On August 15, 2016, the

4

court found the ICWA did not apply with regard to Brian C., Jr., and on August 31, 2016, found the ICWA did not apply to M.C.

On March 9, 2021, the parents submitted the matter of jurisdiction and the juvenile court found the allegations in the petition true. The court found there was no reason to believe Robert was an Indian child based on the tribes' responses in the prior dependency cases. The court found the ICWA did not apply. The court set the disposition hearing for April 22. It was further continued to June 3.

The department recommended the juvenile court deny the parents reunification services under section 361.5, subdivision (b)(10), (11) and (13) because of their ongoing substance abuse and failure to reunify with Robert's siblings. Robert was placed with five of his siblings and the caregivers were committed to adopting him.

On June 3, 2021, the juvenile court ordered Robert removed from parental custody, denied the parents reunification services as recommended and set a section 366.26 hearing for October 1, 2021. Neither parent filed an extraordinary writ petition.

*C.*     *Termination of Parental Rights*

The department recommended the juvenile court find Robert was likely to be adopted and terminate parental rights. He had medical issues but his medical needs were being met by his caregivers. The department opined it would not be detrimental to Robert to terminate parental rights. Mother attended 53 and father attended three of 60 available visits.

Father appeared through his attorney at the section 366.26 permanency planning hearing on October 1, 2021. His attorney lodged a general objection to the recommendation to terminate parental rights. The court found Robert was likely to be adopted, terminated parental rights, and designated the caregivers as his prospective adoptive parents.

5

**DISCUSSION**

On appeal, father contends the department failed to properly inquire of his Indian heritage. Therefore, the juvenile court's ICWA finding is error. We conclude substantial evidence supports the court's ICWA finding.

### A.  *Standard of Review*

We review the juvenile court's ICWA findings for substantial evidence. (*In re E.W.* (2009) 170 Cal.App.4th 396, 403–404.) "We review factual findings in the light most favorable to the juvenile court's order. [Citation.] Indeed, '[w]e must indulge in all legitimate and reasonable inferences to uphold the [judgment]. If there is substantial evidence supporting the judgment, our duty ends and the judgment must not be disturbed.' [Citation.] Our deference to the fact finder, of course, is not without limit. The substantial evidence standard requires evidence that is ' " ' "reasonable in nature, credible, and of solid value." ' " ' [Citation.] A judgment is not supported by substantial evidence if it is based solely upon unreasonable inferences, speculation or conjecture." (*In re H.B.* (2008) 161 Cal.App.4th 115, 119–120.)

It is a well-settled principle of appellate review that a court's order is presumed correct. (See *Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) A parent appealing from an order terminating parental rights "has the duty to present error affirmatively by an adequate record; error is never presumed." (*In re D.W.* (2011) 193 Cal.App.4th 413, 417–418.)

### B.  *The ICWA*

"The ICWA protects the interests of Indian children and promotes the stability and security of Indian tribes by establishing minimum standards for, and permitting tribal participation in, dependency actions. [Citations.] The substantive provisions of the ICWA apply to the minor's placement in adoption and foster care and to other hearings, such as termination of parental rights, which affect the minor's status." (*In re Holly B.* (2009) 172 Cal.App.4th 1261, 1266.)

When the juvenile court knows or has reason to know that an Indian child is involved, notice of the dependency proceeding must be sent to the tribe, "unless it is determined that the [ICWA] does not apply .…" (25 U.S.C. § 1912, subd. (a); 224.3, subds. (a), (b).) "ICWA's notice requirements serve two purposes. First, they facilitate a determination of whether the child is an Indian child under ICWA." (*In re Isaiah W.* (2016) 1 Cal.5th 1, 8.) "Second, ICWA notice ensures that an Indian tribe is aware of its right to intervene in or, where appropriate, exercise jurisdiction over a child custody proceeding involving an Indian child." (*Ibid.*) The court and the department have a continuing duty to inquire whether a child in a dependency proceeding is an Indian child. (§ 224.2, subd. (a).)

"A determination by an Indian tribe that a child is or is not a member of, or eligible for membership in, that tribe … shall be conclusive." (§ 224.2, subd. (h).) "If the court makes a finding that proper and adequate further inquiry and due diligence as required in [section 224.2] have been conducted and there is no reason to know whether the child is an Indian child, the court may make a finding that the [ICWA] does not apply to the proceedings, subject to reversal based on sufficiency of the evidence. The court shall reverse its determination if it subsequently receives information providing reason to believe that the child is an Indian child and order the social worker or probation officer to conduct further inquiry pursuant to Section 224.3." (§ 224.2, subd. (i)(2).) "Notwithstanding a determination that the [ICWA] does not apply to the proceedings, if the court, social worker, or probation officer subsequently receives any information required by Section 224.3 that was not previously available or included in the notice issued under Section 224.3, the party seeking placement shall provide the additional information to any tribes entitled to notice .…" (§ 224.2, subd. (j).)

C.      *Substantial Evidence That the ICWA Did Not Apply*

Father contends there is insufficient evidence the department properly inquired into Robert's Indian ancestry as required by the ICWA. The fact that the court previously

7

found the ICWA did not apply in the dependency cases involving Robert's siblings, he argues, did not excuse the department from fulfilling its duty as to Robert. Father further argues the information the department provided to the court regarding the prior ICWA findings was inadequate for the court to make an ICWA finding. We concur the department could have provided more information. However, we conclude the record contains substantial evidence to support the court's ICWA finding.

First, substantial evidence supported the juvenile court's finding the department acted with "due diligence" and made a "proper and adequate" ICWA inquiry before concluding Robert was not an Indian child. (See § 224,2, subd. (i)(2).) It ascertained that in the 2009 dependency case involving B.C., the Choctaw, Cherokee and Blackfeet Indian tribes were notified and responded that B.C. was not an Indian child. On that information, the court found the ICWA did not apply. During a second dependency case in late 2011 and early 2012, father was asked if he had Indian heritage. The department researched the ICWA notification in the previous case and in February 2012, the court found the ICWA did not apply. The court found the ICWA did not apply again in December 2014 after receiving responses from two Choctaw tribes. The court made the finding again in August 2016. Further, the statement by father's attorney in this case that he represented father in the prior dependency cases and believed father claimed Indian heritage in the Choctaw and Blackfeet tribes in those cases supports a conclusion the tribes were notified but the court found father did not have Indian heritage through those tribes. Considering the plethora of documentation required to effectuate ICWA compliance, one would think the department could have provided the court more than a paragraph in a report summarizing the results of its notification efforts. Ideally, the department would have produced copies of the notice forms from each dependency case sent to the tribes (ICWA-030 "Notice of Child Custody Proceeding for Indian Child"), their responses and the minute orders reflecting the court's ICWA findings. Nevertheless, we can infer from the evidence on the record that father previously claimed

8

Indian heritage through the Choctaw and Blackfeet tribes, the tribes were notified of the dependency proceedings and did not find that father's children were Indian children.

Second, there is no evidence that the juvenile court was presented with any new information providing "reason to believe that the child is an Indian child," which would have warranted further inquiry.  (See § 224.2, subd. (i)(2).)  Father does not allege the existence of new information not previously available or provided to the Choctaw and Blackfeet tribes which would bear on Robert's ICWA status and justify renewed ICWA notice.  (See § 224.2, subd. (j).)

We conclude the juvenile court did not err in finding the ICWA does not apply to Robert and affirm.

## DISPOSITION

The order terminating parental rights is affirmed.