Filed 8/3/22  In re F.V. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| In re F.V. et al., Persons Coming Under the Juvenile Court Law. | C095017 |
| SAN JOAQUIN COUNTY HUMAN SERVICES AGENCY, | (Super. Ct. No. STK-JD-DP-2021-0000070) |
| Plaintiff and Respondent, | |
| v. | |
| C.V., | |
| Defendant and Appellant. | |

C.V. (mother) appeals from the juvenile court's dispositional findings and orders. (Welf. & Inst. Code, § 395.)[1]  She contends the San Joaquin County Human Services Agency (Agency) and the juvenile court failed to comply with the inquiry requirements

---

[1]  Undesignated statutory references are to the Welfare and Institutions Code.

1

of the Indian Child Welfare Act (ICWA) (25 U.S.C. § 1901 et seq.) because the Agency did not contact extended family members to inquire about the ICWA. She further contends the juvenile court lacked jurisdiction to condition modification of its visitation order concerning the minor, F.V.,[2] upon mother's completion of substance abuse treatment and counseling.

We conclude that the ICWA issue is premature, and the juvenile court did not err in its visitation order. Accordingly, we shall affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Because the issues on appeal are limited, we dispense with a detailed recitation of the underlying facts and procedure.

On February 22, 2021, the Agency filed a section 300 petition on behalf of the minors F.V. (born October 2011) and M.N. (born September 2015) alleging the minors came within the provision of section 300, subdivision (b), failure to protect; subdivision (c), serious emotional damage; and subdivision (g), no provision for support. In the detention report, the social worker reported that there was no reason to believe F.V. was an Indian child as defined by the ICWA because both mother and F.V.'s father, A.V., stated there was no Native American ancestry in their respective families. As to M.N., the social worker reported that M.N.'s father, J.N., reported possible Native American ancestry through his paternal line. The social worker reported that father J.N. completed an ICWA-010 form, and an ICWA-030 form would be completed after the petition was filed.

At the February 23, 2021, detention hearing, the juvenile court found A.V. was the presumed father of F.V., and J.N. was the alleged father of M.N., pending paternity testing. The court then ordered the minors detained in protective custody. The court

---

[2] The minor is referred to as both F.V. and F.F. in the record. We will use F.V. throughout this opinion for consistency.

inquired and advised mother and father of F.V. about the Native American heritage requirements and directed them to complete the ICWA-020 forms. The court then directed the Agency to arrange visitation for mother and A.V. The court subsequently found J.N. was the biological father of M.N. and directed the Agency to arrange visitation. At the jurisdictional hearing on March 9, 2021, the parties submitted on the petition, which was amended in court. The court directed the Agency to place F.V. with A.V. on an in-home visit. At the continued jurisdiction hearing on May 11, 2021, the court found the allegations of the petition true as to mother and took jurisdiction over the minors.

On March 10, 2021, ICWA-020 forms completed by A.V. and mother were filed with the juvenile court, stating that they each had no Native American ancestry. The Agency's jurisdiction report again stated that J.N. told the social worker about possible Navajo ancestry through his paternal line. But on June 3, 2021, the Agency filed the ICWA-020 form completed by J.N. in which he indicated he had no Native American ancestry.

On July 16, 2021, the Agency filed a disposition report, reporting that there was no reason to know the minors were Indian children within the meaning of the ICWA, based on the parents' signed ICWA-020 forms. The Agency's report did not list any further efforts to contact relatives about any possible Native American heritage. The report showed that F.V. was placed with her father, A.V., on March 9, 2021. The Agency noted that A.V. was the nonoffending parent and recommended dismissal of the juvenile court's jurisdiction over F.V. The Agency recommended that full physical custody of the minor be awarded to A.V. with supervised visitation to mother with the minor and joint legal custody, as outlined in the attached proposed custody orders. The report showed that M.N. was placed with the paternal grandmother, who was willing to take legal guardianship, but was not willing to adopt the minor should reunification fail, and the Agency submitted a family finding referral for M.N.

3

The disposition report showed that mother was offered a reunification case plan that consisted of substance abuse treatment, compliance with court orders, obtaining stable housing, parenting education classes, and individual counseling. Mother's therapist reported concerns, after the initial intake session, that mother appeared to still be using drugs. The therapist did not believe mother was ready to participate in therapy and was concerned that mother continued to maintain a relationship that included domestic violence. The report showed that, despite referrals to services, mother was not consistently engaging in those services.

At the August 24, 2021, dispositional hearing, the parties discussed mother's visitation with F.V., since the Agency recommended terminating jurisdiction and issuing custody orders for that minor. Counsel for father A.V. requested supervised visitation occur once a week because the minor did not want to visit with mother and because mother did not engage in services. Mother opposed the weekly visitation schedule proposed by father A.V. and noted that she spoke with F.V. on the phone "pretty often." The minor's counsel confirmed that F.V. did not want to visit with mother. Because the recommendation was to dismiss F.V. from the dependency proceeding, it was suggested that the court allow F.V. to visit with mother during one of M.N.'s scheduled supervised visits. None of the parties objected to the dismissal of F.V. from the dependency proceeding. The court adopted the Agency's proposed findings and orders as outlined in the disposition report, which included the custody orders attached to the report. The court ordered physical and primary custody of F.V. to father A.V. and joint legal custody of the minor to both mother and A.V., dismissing the minor from the dependency. In order to facilitate supervision of mother's visits with F.V., the court ordered that visits between F.V. and mother occur weekly during mother's supervised visit with M.N. The order provides, "Mother's visits will remain supervised/ or monitored until she provides proof of successful completion of: [a substance abuse] treatment program and 20 weeks of individual counseling."

At the September 1, 2021, placement hearing, the juvenile court was informed that the paternal grandmother was not cooperating with having M.N. assessed for services and transporting the minor to visits. The court was informed that paternal grandmother said that she was no longer able to provide care for the minor. After explanation of the court's expectations, the court acknowledged the paternal grandmother's misunderstanding as to her role in the dependency and continued M.N. in that placement. The court made no findings related to the ICWA.

Mother timely appealed.

**DISCUSSION**

I

*ICWA Inquiry*

Mother contends that the dispositional order must be reversed due to noncompliance with the inquiry and notice requirements of the ICWA despite a reason to believe the minor, M.N., was an Indian child based on the initial representation of the minor's father, J.N., that he may have Native American ancestry. The Agency contends that any error in its failure to inquire among relatives about possible Native American ancestry was harmless because the minor was placed with the paternal grandmother. As we shall explain, the ICWA issue is premature and we will affirm the dispositional order.

"The ICWA protects the interests of Indian children and promotes the stability and security of Indian tribes by establishing minimum standards for removal of Indian children from their families, and by permitting tribal participation in dependency proceedings. (See 25 U.S.C. § 1902; *In re Levi U.* (2000) 78 Cal.App.4th 191, 195-196.) A major purpose of the ICWA is to protect 'Indian children who are members of or are eligible for membership in an Indian tribe.' (25 U.S.C. § 1901(3).)" (*In re A.W.* (2019) 38 Cal.App.5th 655, 662.) The ICWA defines an " 'Indian child' " as a child who "is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." (25 U.S.C. § 1903(4).) The

5

juvenile court and the Agency have an affirmative and continuing duty, beginning at initial contact, to inquire whether a child who is subject to the proceedings is, or may be, an Indian child. (Cal. Rules of Court, rule 5.481(a); § 224.2, subd. (a).)

Section 224.2, subdivision (e) provides that if the court or social worker has *reason to believe* that an Indian child is involved in a proceeding, the court or social worker shall, as soon as practicable, make further inquiry regarding the possible Indian status of the child. As relevant here, further inquiry includes interviewing the parents, Indian custodian, and extended family members to gather the information required in paragraph (5) of subdivision (a) of Section 224.3.[3] (§ 224.2, subd. (e).)

"[S]ection 224.2 creates three distinct duties regarding ICWA in dependency proceedings. First, from the Agency's initial contact with a minor and his [or her] family, the statute imposes a duty of inquiry to ask all involved persons whether the child may be an Indian child. (§ 224.2, subds. (a), (b).) Second, if that initial inquiry creates a 'reason to *believe*' the child is an Indian child, then the Agency 'shall make *further inquiry* regarding the possible Indian status of the child, and shall make that inquiry as soon as practicable.' (*Id.,* subd. (e), italics added.) Third, if that further inquiry results in a reason to *know* the child is an Indian child, then the formal notice requirements of section 224.3 apply. (See § 224.2, subd. (c) [court is obligated to inquire at the first appearance whether anyone 'knows or has reason to know that the child is an Indian child']; *id.,* subd. (d) [defining circumstances that establish a 'reason to know' a child is an Indian child]; § 224.3 [ICWA notice is required if there is a 'reason to know' a child is an Indian child as defined under § 224.2, subd. (d)].)" (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1052.) "The juvenile court must determine whether proper notice was given under

---

[3] Section 224.3, subdivision (a)(5) includes the name, birth date, and birthplace of the Indian child, if known; the name of the Indian tribe; and the names and other identifying information of the Indian child's biological parents, grandparents, and great-grandparents, if known.

ICWA and whether ICWA applies to the proceedings." (*In re E.W.* (2009) 170 Cal.App.4th 396, 403.)

Here, father J.N. initially indicated to the social worker that he may have Indian ancestry. Several months later, father J.N. completed an ICWA-020 form stating he had no Native American ancestry. There is no indication in any of the Agency's reports that the Agency undertook any further ICWA inquiry of known relatives. However, because the juvenile court made no ICWA ruling at or before the challenged dispositional hearing as to whether the ICWA applied to the proceedings, mother's ICWA claim is premature. That is, the ICWA issues are not ripe for review.

" 'Ripeness' refers to the requirements of a current controversy." (*City of Santa Monica v. Stewart* (2005) 126 Cal.App.4th 43, 59.) An issue is not ripe for review unless and until it is "sufficiently concrete to allow judicial resolution even in the absence of a precise factual context." (*Pacific Legal Foundation v. California Coastal Com.* (1982) 33 Cal.3d 158, 170; see *id.* at pp. 170-172.) Mother contends that because the juvenile court ordered M.N.'s removal at disposition without finding " 'active efforts' " to prevent removal had been made, the disposition order is necessarily premised on an implied finding that the ICWA did not apply. But she cites no authority to support her position. We decline mother's invitation to assess the adequacy of the ICWA inquiry and noticing process because the minor's dependency case is ongoing. Any perceived deficiencies with the ICWA inquiry and noticing may still be resolved during the normal course of the dependency proceedings. (See, e.g., *In re M.R.* (2017) 7 Cal.App.5th 886, 904 [the ICWA claim was premature where no final ICWA ruling made at dispositional hearing].) Although this issue is not yet ripe, we note that the Agency and juvenile court should ensure that the ICWA inquiry is properly completed and the required findings are made as the case advances.

## II

### *Visitation Order*

Mother contends the juvenile court lacked jurisdiction to issue an order dismissing the minor, F.V., from the dependency but requiring mother to complete a substance abuse treatment program and individual counseling before visitation would be unsupervised. Specifically, she contends "[t]he juvenile court lacked jurisdiction to condition the family court's ability to modify its custody or visitation order on mother's completion of services." We disagree with mother's characterization of the order.

In crafting an exit order at the termination of dependency proceedings, a juvenile court may issue custody and visitation orders (§ 362.4, subd. (a)), as well as collateral orders regarding such things as counseling or parenting classes that the juvenile court determines, in its broad discretion, would serve the child's interest. (*In re Chantal S.* (1996) 13 Cal.4th 196, 204; *In re Cole Y.* (2015) 233 Cal.App.4th 1444, 1456 (*Cole Y.*).) The family court enforces such orders following the termination of juvenile court jurisdiction. (See § 362.4, subds. (a) & (b).) But the family court has authority under section 302, subdivision (d) to modify or terminate such juvenile court orders, if "the [family] court finds . . . there has been a significant change of circumstances since the juvenile court issued the order and modification of the order is in the best interests of the child." (§ 302, subd. (d).)

Mother cites *Cole Y.* for the proposition that a juvenile court does not have authority to limit the family court's ability to modify such an order, contending that the order in this case is comparable. But in *Cole Y.* the juvenile court order *expressly* conditioned the family court's ability to modify the juvenile court's custody and visitation order on the parent completing counseling. (*Cole Y., supra*, 233 Cal.App.4th at p. 1451 [juvenile court order on review provided that " 'in order to modify the [juvenile] court's orders, . . . [the] Father will have to complete . . . a full drug program with weekly testing, a parenting program and individual counseling' "].) In contrast, the custody order

here does *not* explicitly limit the family court's modification of the order. The order provides, "Mother's visits will remain supervised/ or monitored until she provides proof of successful completion of: [a substance abuse] treatment program and 20 weeks of individual counseling." Contrary to mother's characterization of the order, the order cannot be construed as placing a condition or limitation on the family court's authority to modify it. Mother remains free to seek a modification of the order based on "a significant change of circumstances" that is in F.V.'s best interests. (§ 302, subd. (d).) Thus, the family court remains free to modify or terminate the exit order based on its own findings of changed circumstances and the child's best interest. (See *Heidi S. v. David H.* (2016) 1 Cal.App.5th 1150, 1164.) Nothing in the order expressly prohibits or limits these paths to modification. Accordingly, we reject mother's contention.

**DISPOSITION**

The orders of the juvenile court are affirmed.


/s/
HOCH, J.

We concur:


/s/
HULL, Acting P. J.


/s/
DUARTE, J.

9