Filed 11/18/24  In re S.M. CA5

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re S.M. et al., Persons Coming Under the Juvenile Court Law. | |
| KERN COUNTY DEPARTMENT OF HUMAN SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>C.M. et al.,<br><br>Defendants and Appellants. | F088255<br><br>(Super. Ct. Nos. JD145354-00 & JD145355-00)<br><br>**OPINION** |

## THE COURT[*]

APPEAL from an order of the Superior Court of Kern County.  Christie Canales Norris, Judge.

Elaine Forrester, under appointment by the Court of Appeal, for Defendant and Appellant, C.M.

Gregory M. Chappel, under appointment by the Court of Appeal, for Defendant and Appellant, M.J.

---

[*]     Before Franson, Acting P. J., Peña, J. and DeSantos, J.

Margo A. Raison, County Counsel, and Alexandria Ottoman, Deputy County Counsel, for Plaintiff and Respondent.

-ooOoo-

Appellants C.M. and M.J., parents of minor children C.M. and S.M., appeal from the juvenile court's order terminating their parental rights (Welf. & Inst. Code,[1] § 366.26). They argue the court erred under the Indian Child Welfare Act of 1978 (25 U.S.C. § 1901 et seq.; ICWA) by failing to make findings as to whether inquiry was adequate and additionally that the evidence was insufficient to make such a finding. Respondent Kern County Department of Human Services (department) concedes error and requests conditional reversal and remand.

We accept the department's concession; we conditionally reverse the order terminating parental rights and remand to ensure compliance with ICWA inquiry provisions.

**FACTUAL AND PROCEDURAL BACKGROUND**

The underlying dependency case was initiated in San Bernardino County. The San Bernardino County Children and Family Services agency (SBCFS) filed a petition on behalf of then eight-month-old S.M. in July 2022, alleging he came within the juvenile court's jurisdiction under section 300, subdivisions (b)(1) and (j). The department reported that paternal grandmother and a maternal cousin both claimed no Native American ancestry.

S.M. was ordered detained from the parents on July 28, 2022. The parents were not present at the detention hearing.

---

[1] All further undesignated statutory references are to the Welfare and Institutions Code.

2.

In December 2022, a petition was filed on behalf of S.M.'s sibling, newborn C.M., alleging he came within the juvenile court's jurisdiction under section 300, subdivisions (b)(1) and (j).

Mother subsequently executed a "PARENTAL NOTIFICATION OF INDIAN STATUS" (ICWA-020) form indicating she had lineal ancestors who were members of the Navajo Nation out of Albuquerque, New Mexico. Father executed an ICWA-020 form indicating none of the indicia suggesting the children were Indian children applied. Both parents additionally provided phone numbers of several relatives.

The detention hearing related to C.M.'s petition was conducted on December 21, 2022. At the hearing, the San Bernardino juvenile court heard testimony regarding ICWA. Mother testified she had Native American ancestry through the Navajo Nation, but to her knowledge, she was not eligible for membership. She further testified her grandmother's brother had lived on a reservation but to her knowledge neither she nor her lineal ancestors had utilized Indian legal services or gone to Indian school. She provided the maternal grandmother's name—S.H.—and phone number on the record. Father and paternal grandmother were also present and denied Native American ancestry. C.M. was ordered detained from the parents.

SBCFS subsequently followed up on mother's claim, and she clarified her grandmother, the maternal great-grandmother—N.P.—was part of the Navajo Nation. SBCFS also conducted inquiry of a maternal aunt and a paternal aunt, who both denied Native American ancestry. SBCFS also reported attempting to contact several other relatives for whom voice mails were left. They also attempted to contact the maternal grandmother S.H., but the voice mailbox was full. SBCFS sent three inquiry letters to the Colorado River tribe, Navajo Nation tribe, and Ramah Navajo tribe via e-mail dated January 10, 2023. The letters listed the children and parents' names and dates of birth and indicated mother was claiming Navajo heritage through the maternal grandmother—S.H.

The Navajo Nation responded in a letter dated February 1, 2023, that it was in the process of verifying the children's "enrollment or eligibility for enrollment with the Navajo Nation" and that they should be treated as Indian children until it was determined on the record that they did not meet the statutory definition of Indian child.

A combined jurisdictional/dispositional hearing was conducted as to both children on February 15, 2023. At the hearing, the juvenile court noted the inquiries with the Navajo tribes did not contain familial information. The court obtained names and dates of birth of lineal ancestors from the parents on the record, including the name of mother's relative who lived on a reservation. The court ordered additional inquiry with the Navajo tribe to include the additional relative and statistical information as well as any other information SBCFS had obtained. The court found ICWA may apply and ordered the department to provide a packet within 60 days regarding the additional inquiry that needed to be conducted. The court found the children came within its jurisdiction under section 300, subdivisions (b) and (j), adjudged them dependents, and removed them from their parents' custody. Father was ordered to participate in reunification services, and mother was bypassed for services.

SBCFS subsequently made inquiry of several maternal relatives, including an adult sibling, who reported she had heard her maternal grandparents talk about Native American ancestry; a maternal great uncle, who denied Native American ancestry; maternal grandmother, S.H., who reported her uncle may have received Indian services but had passed away; maternal great-grandmother, N.P., who reported she did not know if she had Native American ancestry and that she had Indian ancestry through Chihuahua, Mexico.

SBCFS received another letter from the Navajo Nation dated April 6, 2023, indicating the tribe was unable to verify the children's eligibility for tribal membership enrollment based on the additional ancestry provided and thus "the intake will be closed." Later that month, SBCFS sent out new letters to the Navajo tribes listing only the

children's and parents' names, as well as several maternal half siblings names and dates of birth. A hearing for an ICWA update was conducted on April 24, 2023, where this information was provided to the court. It does not appear the court made any orders as to whether ICWA applied at the hearing.

The six-month status review hearing was conducted on August 15, 2023. Father's reunification services were continued. It does not appear any ICWA orders were made at the hearing.

The 12-month status review hearing was conducted on September 18, 2023. Father had indicated he had been living in Kern County for over six months and would like the case transferred to Kern County. County counsel indicated they would verify father's residence and determine whether it would file a motion to transfer out. Father's services were continued. It does not appear any ICWA orders were made at the hearing.

SBCFS filed a motion for transfer out on November 8, 2023. The court subsequently issued transfer-out orders, including that the court had not yet determined whether ICWA is applicable.

The Kern County juvenile court accepted the case at a transfer-in hearing on December 8, 2023. At the hearing, county counsel stated, "[W]e recognize that there hasn't been a finding regarding ICWA yet. The prior court in San Bernardino—the agency did send out notices to two Navajo tribes. I'll have our ICWA paralegals follow up and get responses from those tribes."

The department's 12-month (for C.M.)/18-month (for S.M.) status review report included the ICWA information previously set forth in the SBCFS reports. It also stated the department family finding social worker reviewed a previous dependency case where mother reported Navajo Native American ancestry through the maternal great-grandmother, N.P. The social worker subsequently attempted inquiry of several relatives, including N.P. N.P. denied Native American ancestry and denied any familial association with the Navajo Nation.

5.

The 12-month/18-month status review hearing was conducted on February 15, 2024.  Father's services were terminated, and a section 366.26 hearing was set.

The department's section 366.26 report set forth the ICWA inquiries made by SBCFS but not the subsequent inquiries made by the department that were previously reported and additionally stated, "On December 8, 2023, the Court found there was no ICWA finding made."  The report later stated ICWA "is still being determined in this matter as the mother reported that her grandmother was part of the Navajo Nation."

The section 366.26 hearing was conducted on June 13, 2024.  The court ordered parental rights terminated and selected adoption as the children's permanent plan.  No ICWA findings were made at the hearing.

## DISCUSSION

Under California's statutory scheme to comply with ICWA, the court and county child welfare department "have an affirmative and continuing duty to inquire whether a child," who is the subject of a juvenile dependency petition, "is or may be an Indian child."[2]  (§ 224.2, subd. (a); see *In re Isaiah W.* (2016) 1 Cal.5th 1, 9; Cal. Rules of Court, rule 5.481(a).)  The agency's duty of inquiry includes "asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child and where the child, the parents, or Indian custodian is domiciled."  (§ 224.2, subd. (b)(2).)  When the court or social worker has "reason to believe" (but not sufficient evidence to determine there is "reason to know" as defined in § 224.2, subd. (d)) that an Indian child is involved in a proceeding, "further inquiry regarding the possible Indian status of the child" is required.  (§ 224.2, subd. (e).)

---

[2]     An "Indian child" is defined in ICWA as an unmarried individual under 18 years of age who is either (1) a member of a federally recognized Indian tribe, or (2) is eligible for membership in a federally recognized tribe and is the biological child of a member of a federally recognized tribe.  (25 U.S.C. § 1903(4) & (8); see § 224.1, subd. (b).)

The agency "must on an ongoing basis include in its filings a detailed description of all inquiries, and further inquiries it has undertaken, and all information received pertaining to the child's Indian status, as well as evidence of how and when this information was provided to the relevant tribes." (Cal. Rules of Court, rule 5.481(a)(5).)

" ' " 'The juvenile court must determine whether … ICWA applies to the proceedings.' " " ' " (*In re J.C.* (2022) 77 Cal.App.5th 70, 78.) Before finding ICWA inapplicable, the juvenile court must make a finding that the agency conducted "proper and adequate further inquiry" and exercised "due diligence" in doing so, and that "there is no reason to know whether the child is an Indian child." (§ 224.2, subd. (i)(2).)

The parents point out that while SBCFS sent out letters to the Navajo tribes, they incorrectly identified the maternal grandmother, S.H., rather than N.P. as the relative whom mother was claiming Navajo ancestry through. They also point out the department never contacted the Bureau of Indian Affairs (BIA) and State Department of Social Services, as they must do when further inquiry is required. Finally, they contend the court's failure to make any determinative ICWA findings was reversible error. They contend the matter must be remanded for corrected notice to be sent to the Navajo tribes identifying the maternal great-grandmother's name and notice to be sent to the BIA and state agency before the juvenile court can make an informed decision regarding ICWA.

The department has responded simply by conceding "the juvenile court may have erred in making a finding under [ICWA]" and requests that this court conditionally reverse the order and remand the matter to ensure compliance with ICWA inquiry provisions.

We accept the department's concession in light of the fact that no court ever made express ICWA findings. As this court stated in *In re K.H.* (2022) 84 Cal.App.5th 566, ICWA determinations are best left "for the juvenile court in the first instance because it is better positioned to evaluate the evidence provided by the Department. So long as the court ensures the inquiry is reasonable and of sufficient reach to accomplish the

legislative purpose underlying ICWA and related California law, the court will have an adequate factual foundation upon which to make its ICWA finding." (*In re K.H.*, at p. 621.)

Here, both child welfare agencies involved in this case made numerous inquiries of several relatives and attempted to follow up on mother's claim that the maternal great-grandmother had Navajo ancestry though the maternal great-grandmother herself was equivocal and later denied any Native American ancestry. Nonetheless, the children's potential relation with the Navajo Nation was never definitively discovered. Mother claimed Navajo ancestry through the maternal great-grandmother, but in the initial e-mails sent to the tribes, only the maternal grandmother's name was given, and in the follow up letters, only maternal half siblings were provided. It does not appear SBCFS ever provided the additional familial information the San Bernardino court ordered it to provide to the tribes nor did the department follow up with the tribes as county counsel represented it would at the transfer-in hearing. Further, there is no evidence before us that the juvenile court considered this evidence or any other evidence before it to make informed ICWA findings. (See *In re E.W.* (2009) 170 Cal.App.4th 396, 405 [holding that an implicit ICWA finding may suffice, "as long as the reviewing court can be confident that the juvenile court considered the issue and there is no question but that an explicit ruling would conform to the implicit one"].)

We therefore agree with the parties that conditional reversal and remand is appropriate under the circumstances of this case. The juvenile court must evaluate in the first instance the evidence, as well as any additional evidence the department presents to it, to determine whether the inquiry was of sufficient reach to inform the juvenile court and whether the information provided gives rise to a reason to know the children are Indian children. We do not reach nor comment on the parents' specific arguments regarding whether the department's inquiry was adequate. It would be premature to do so, as those matters may be raised in, and considered by, the juvenile court on remand,

8.

though, as the department's concession suggests they have conducted or plan to conduct additional inquiry, there may be no need to do so.

## DISPOSITION

The order terminating parental rights is conditionally reversed. The matter is remanded for compliance with the inquiry and notice requirements of sections 224.2 and 224.3 and the documentation provisions of California Rules of Court, rule 5.481(a)(5). If the juvenile court thereafter finds a proper and adequate further inquiry and due diligence has been conducted and concludes ICWA does not apply, then the court shall reinstate the order terminating parental rights. If the juvenile court concludes ICWA applies, then it shall proceed in conformity with ICWA and California implementing provisions.