[No. E045896. Fourth Dist., Div. Two. Jan. 21, 2009.]

In re E.W. et al., Persons Coming Under the Juvenile Court Law.
RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES,
Plaintiff and Respondent, v.
V.P., Defendant and Appellant.

## COUNSEL

Patricia K. Saucier, under appointment by the Court of Appeal, for Defendant and Appellant.

Joe S. Rank, County Counsel, and Anna M. Deckert, Deputy County Counsel, for Plaintiff and Respondent.

Leslie A. Barry, under appointment by the Court of Appeal, for Minors.

## OPINION

**RAMIREZ, P. J.**—Appellant V.P. (Mother) is the mother of E.W. and P.W. Mother appeals from the juvenile court's order terminating her parental rights at a hearing held under Welfare and Institutions Code section 366.26 held on May 13, 2008.[1] Mother makes a threefold challenge under the Indian Child Welfare Act of 1978 (ICWA; 25 U.S.C. § 1901 et seq.): (1) The Riverside County Department of Public Social Services (DPSS) did not provide proper notice to the Indian tribes; (2) DPSS did not receive responses from all of the noticed tribes or from the Bureau of Indian Affairs (BIA); and (3) the juvenile court did not make a finding that ICWA did not apply. As discussed below, we find that any error was not prejudicial and so affirm the court's orders.

---

[1] All section references are to the Welfare and Institutions Code unless otherwise indicated.

# I

## STATEMENT OF FACTS AND PROCEDURE

On December 14, 2006, two-year-old E. and newborn P. were removed from their parents' custody after both Mother and P. tested positive for marijuana and amphetamines in the hospital after P.'s birth. During a December 13, 2006, interview with the social worker, Mother denied having any Native American heritage. In a December 14, 2006, interview with the social worker, the children's father (Father) said that his family had Choctaw Indian ancestry from Arkansas or Oklahoma but that he was not registered with the tribe.

The section 300 juvenile dependency petition was filed on December 18, 2006, and alleged that Mother and Father had failed to protect the children because of their drug abuse and Mother's lack of prenatal care for P. and that Mother had previously had another child removed from her care. (§ 300, subd. (b).) The children were placed in a foster home.

At the detention hearing held on December 19, 2006, the juvenile court detained the children and ordered reunification services for the parents, along with supervised visitation. On that date both parents completed a Judicial Council form JV-130. Mother denied having any Native American heritage, but Father checked the box indicating he might have such ancestry, although he did not specify a particular tribe. The juvenile court determined that ICWA might apply and ordered DPSS to give notice to the appropriate tribe and to the BIA.

On December 28, 2006, Father told the social worker that his uncle was a registered member of the Choctaw tribe in Arkansas or Oklahoma and that Father was trying to get the paperwork so he could register as well.

On January 3, 2007, DPSS sent the ICWA notice, with the jurisdiction and disposition report attached, to the three identified Choctaw Indian tribes and to the BIA. The notices referred to E., but not to P. The notices to the three Choctaw tribes were addressed generally to each tribe and were not directed to the tribal chair or designated agent for service.

At the jurisdiction and disposition hearing held on January 11, 2007, the juvenile court sustained the allegations and removed the children from their parents' custody. The court found that DPSS had provided ICWA notice and determined that ICWA might apply to this case.

In the status review report filed July 26, 2007, DPSS reported that ICWA did not apply to this dependency. This is because responses had been received from two of the three Choctaw Indian tribes stating that E. was not eligible for membership.

In the section 366.26 report filed on February 1, 2008, DPSS reported that ICWA did not apply. DPSS reported the same conclusion in the status review report filed on April 16, 2008. At the section 366.26 hearing finally held on May 13, 2008, the juvenile court found the children to be adoptable and terminated parental rights. This appeal followed.

## II

### DISCUSSION

A. *ICWA Notice Issues*

1. *Lack of Notice Regarding P.*

Mother contends the order terminating parental rights should be reversed because the ICWA notices referenced E. but not P.

■ DPSS concedes that it should have filed a copy of the notice regarding P. However, DPSS argues, and we agree, that since E. and P. have the same father, and since tribal investigations determined E. is not an Indian child, P. is also not an Indian child, and thus any error is harmless. This is because there is no reason to believe that providing separate notice regarding P. "would have produced different results concerning [P.'s] Indian heritage." (*Nicole K. v. Superior Court* (2007) 146 Cal.App.4th 779, 784 [53 Cal.Rptr.3d 251]; see also *In re Cheyanne F.* (2008) 164 Cal.App.4th 571, 576–577 [79 Cal.Rptr.3d 189], and cases cited therein.)

We acknowledge that decisions from other courts can be read to imply a different conclusion on this issue, i.e., that reversal and a limited remand is the proper disposition. The cases brought to our attention include *In re Samuel P.* (2002) 99 Cal.App.4th 1259, 1266 [121 Cal.Rptr.2d 820] (*Samuel P.*), *In re Robert A.* (2007) 147 Cal.App.4th 982 [55 Cal.Rptr.3d 74] (*Robert A.*), and *In re Miracle M.* (2008) 160 Cal.App.4th 834, 846, 848 [73 Cal.Rptr.3d 24] (*Miracle M.*). Each of these cases can be distinguished in some significant manner from the present one.

In *Samuel P.*, the ICWA notice regarding the minors' sibling, which the child services agency sought to use to satisfy the ICWA notice requirements for the minors, was not properly made in the first place. It was a mere request

for confirmation of the sibling's Indian status rather than a formal notice of dependency proceedings. (*Samuel P., supra*, 99 Cal.App.4th at p. 1266.) Thus, the issue of whether the ICWA notice as to the sibling would have sufficed was not squarely before the appellate court. In addition, several members of the minors' family were tribal members, including an aunt who was a tribal council member (*id*. at p. 1263) and so the possibility of actual prejudice or error was significant.

In *Robert A.*, the ICWA notices in the half sibling's separate dependency case, which the child services agency sought to place in the record on appeal, were not mailed to the Indian tribes until *after* the notice of appeal in the minor's case was filed, and thus were not available to the juvenile court at the time it terminated services to the father. In addition, one of the court's reasons for declining to allow judicial notice of the ICWA documents was that the half sibling's dependency case was heard by the juvenile court in a different city and by a different judicial officer. (*Robert A., supra*, 147 Cal.App.4th at p. 989.) This case, however, does contain the strongest statement against harmless error in cases such as this in recent case law— "We reject Agency's attempt to bootstrap this case to the half sibling's case for ICWA purposes . . . ICWA notices in separate dependency cases are not fungible evidence—even when the separate cases involve half siblings who share the same parent with Indian heritage." (*Robert A.*, at p. 990.) We would not describe the ICWA notices as to E. in this case to be "fungible" as to P., but rather, under the particular facts of this case, to be completely applicable to P. This is in part because, unlike in *Robert A.*, the siblings E. and P. are part of the same dependency case, in the same courthouse, before the same judicial officer.

Regarding *Miracle M.*, the child services agency conceded the ICWA notice issue, and so the court did not provide *any* discussion of the issue or of the rationale for its decision *whatsoever*, other than to note the concession. Further, the court in that case stressed that defective ICWA notice to the parents was harmless error because "Mother has not demonstrated how giving the parents further notice would generate additional information." (*Miracle M., supra*, 160 Cal.App.4th at p. 847.) We assert the same reasoning for our holding here today—because both E. and P. have the same parents, sending an additional ICWA notice to the three Choctaw tribes and to the BIA regarding P. would not have generated any additional information because the notices had already been sent regarding E.

To the extent that any of these cases cannot be factually distinguished from the present case, we respectfully disagree based on considerations of judicial economy, the assured futility of providing identical notice regarding P., and the children's need for stability. Even a conditional reversal with

limited remand would be an empty formality and a waste of ever-more-scarce judicial resources. This is because there is no doubt that the three Choctaw tribes and the BIA would respond to any ICWA notices regarding P. with the exact same answer as they did when they received these notices regarding E. In addition, the children have been placed together in their current foster/adoptive home since September of 2007, when E. was two years old and P. was seven months old. They deserve permanence and stability as soon as possible. We cannot condone delaying that permanence for an empty exercise with a preordained outcome, especially where that exercise does nothing concrete to further the purposes of ICWA—"to give tribes the opportunity to investigate and determine whether a child is an Indian child, and to advise the tribe of the pending proceeding and its right to intervene." (*In re G.S.R.* (2008) 159 Cal.App.4th 1202, 1216 [72 Cal.Rptr.3d 398], citing *In re Desiree F.* (2000) 83 Cal.App.4th 460, 470 [99 Cal.Rptr.2d 688].)

## 2. *Notices Not Addressed to Tribal Chair*

Mother also contends the order terminating parental rights should be reversed because the ICWA notices were addressed generally to "Choctaw Nation of Oklahoma," "Jena Band," and "Mississippi Band of Choctaw Indians," instead of the tribal chair or designated agent for service, as ICWA requires.

■ ICWA notice must be sent to all tribes of which the child may be a member or eligible for membership. (Cal. Rules of Court, rule 5.481(b)(1).) Indian tribes may designate an agent for service of ICWA notices. (25 C.F.R. § 23.12 (2008).) A list of the designated agents and their addresses is published annually by the BIA. (See, e.g., Indian Child Welfare Act; Receipt of Designated Tribal Agents for Service of Notice, 70 Fed.Reg. 13518 (Mar. 21, 2005); see *In re Mary G.* (2007) 151 Cal.App.4th 184, 210 [59 Cal.Rptr.3d 703].) Notice to the tribe "must be sent to the tribal chairperson unless the tribe has designated another agent for service." (Cal. Rules of Court, rule 5.481(b)(4).) "The purpose of the requirement that notice be sent to the designated persons is to ensure that notice is received by someone trained and authorized to make the necessary ICWA determinations, including whether the minors are members or eligible for membership and whether the tribe will elect to participate in the proceedings. Receipt by an unidentified person at the tribe's address does not fulfill this purpose." (*In re J.T.* (2007) 154 Cal.App.4th 986, 994 [65 Cal.Rptr.3d 320].)

We conclude that any error was harmless. Deficiencies in an ICWA notice are generally prejudicial but may be deemed harmless under some circumstances. (*In re S.B.* (2005) 130 Cal.App.4th 1148, 1162 [30 Cal.Rptr.3d 726].) Thus, where notice has been received by the tribe, as it was in this case,

errors or omissions in the notice are reviewed under the harmless error standard. (*Nicole K. v. Superior Court, supra*, 146 Cal.App.4th at p. 784; see also *In re Cheyanne F., supra*, 164 Cal.App.4th at p. 576.)

Here, two of the three Choctaw tribes (the Mississippi Band of Choctaw Indians and the Jena Band) received the notice and responded to it. Any defect in failing to name the tribal chairperson in these notices is harmless. In addition, DPSS received a letter from the Choctaw Nation of Oklahoma in August 2008 stating that neither child has Indian heritage.[2] While this does not necessarily establish that the nation actually received the ICWA notice that was sent in January 2007, it does establish that neither child has Indian heritage, and thus that any error in failing to address the notice to the tribal chair or designated agent was not prejudicial.

### B. Lack of Responses to ICWA Notices

■ Mother further contends the order terminating parental rights should be reversed because the record contains no responses from the BIA or the Choctaw Nation of Oklahoma. Regarding the Choctaw Nation of Oklahoma, they did eventually send a letter stating the children have no Indian heritage, as discussed above. Therefore, for the same reasons stated above, any error was harmless. Regarding the lack of response from the BIA, notice need only be given to the BIA if the identity or location of the tribe cannot be determined. (25 U.S.C. § 1912, subd. (a); *In re Desiree F., supra*, 83 Cal.App.4th at p. 471.) California law provides that notice to BIA is only required "to the extent required by federal law." (§ 224.2, subd. (a)(4).) Thus, as DPSS argues, because the Indian tribes were identified, it was not necessary to also provide notice to BIA, and no error occurred.

### C. Lack of Explicit ICWA Findings

Finally, Mother argues that the juvenile court's failure to make an explicit finding that ICWA did not apply is prejudicial error and requires reversal of the court's orders terminating her parental rights.

■ The juvenile court must determine whether proper notice was given under ICWA and whether ICWA applies to the proceedings. (*In re Asia L.*

---

[2] We hereby grant DPSS's motion to take documentary evidence, filed with this court on September 22, 2008. The motion asks this court to take as evidence without a hearing a letter to DPSS from the Choctaw Nation of Oklahoma dated August 29, 2008. The letter is from the nation's children's social service worker, and indicates that the nation researched its records and was unable to establish Indian heritage for the children. We determine that this evidence will assist in supporting the juvenile court's order and will not create unnecessary delay on appeal. (See *In re Zeth S.* (2003) 31 Cal.4th 396, 414–415 & fn. 11 [2 Cal.Rptr.3d 683, 73 P.3d 541].)

(2003) 107 Cal.App.4th 498, 506 [132 Cal.Rptr.2d 733].) We review the trial court's findings for substantial evidence. (See *In re Karla C.* (2003) 113 Cal.App.4th 166, 178–179 [6 Cal.Rptr.3d 205].)

We conclude that the juvenile court's implicit ruling, though less than ideally set forth in the record, sufficed and fell short of error. The record makes plain that the court considered the relevant information, which established that ICWA does not apply to the children. In addition, the relevant tribes replied that E. (and, hence, P.; see pt. II.A.1., *ante*) was neither a member nor eligible for membership. Under section 224.3, subdivision (e)(1), "[a] determination by an Indian tribe that a child is or is not a member of or eligible for membership in that tribe, or testimony attesting to that status by a person authorized by the tribe to provide that determination, shall be conclusive."

We recognize that courts have disagreed as to whether a court is required to make an explicit finding of the applicability of ICWA. In the case of *In re Levi U.* (2000) 78 Cal.App.4th 191, 199 [92 Cal.Rptr.2d 648], the court ruled that an explicit finding was not required because it was apparent in that case that the juvenile court had found it inapplicable. In the cases of *In re Jennifer A.* (2002) 103 Cal.App.4th 692 [127 Cal.Rptr.2d 54] and *In re Antoinette S.* (2002) 104 Cal.App.4th 1401 [129 Cal.Rptr.2d 15], the courts suggested that the juvenile court should make an explicit finding but noted that in *Levi U.* the juvenile court had correctly made an implicit finding the ICWA was inapplicable, and "[t]he point of the matter is the court must decide, one way or the other, whether the ICWA applies, so it can proceed in compliance therewith when appropriate." (*Jennifer A.*, at p. 705, fn. 5; see also *Antoinette S.*, at p. 1413.)

Here the social worker's reports specifically discussed the ICWA issue and included documentation of the notices sent and the negative responses received from the tribes. Given the several reports (filed Jan. 5 and July 26, 2007, and Feb. 1 and Apr. 16, 2008) specifically discussing the ICWA issue and repeatedly noting that ICWA "does not apply," the record reflects an implicit finding concerning the applicability of the ICWA. In *Jennifer A.*, no copies of the notices or evidence of service on the tribes, receipt of notice by the tribes, or any response from the tribes had been filed with the court. (*In re Jennifer A., supra*, 103 Cal.App.4th at p. 703.)

"While the record must reflect that the court considered the issue and decided whether ICWA applies, its finding may be either express or implied." (*In re Asia L., supra*, 107 Cal.App.4th at p. 506; see also *In re Antoinette S., supra*, 104 Cal.App.4th 1401, 1413 [although "juvenile courts should make an explicit rather than implicit determination as to the applicability of the

ICWA," error occurred only on the juvenile court's failure to rule either explicitly or implicitly]; *In re Jennifer A., supra*, 103 Cal.App.4th at p. 705, fn. 5 ["the court must decide, one way or the other, whether the ICWA applies"].) We agree with these decisions that an implicit ruling suffices, at least as long as the reviewing court can be confident that the juvenile court considered the issue and there is no question but that an explicit ruling would conform to the implicit one. That is surely the case in this matter. The record reflects an implicit finding by the juvenile court that ICWA did not apply.

## III

### DISPOSITION

The juvenile court's orders are affirmed.

Gaut, J., and Miller, J., concurred.

Appellant's petition for review by the Supreme Court was denied April 15, 2009, S170995.