Filed 12/15/20  In re M.M. CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| In re M.M., a Person Coming Under the Juvenile Court Law. | 2d Juv. No. B306644 (Super. Ct. No. 18JV00200) (Santa Barbara County) |
| SANTA BARBARA COUNTY CHILD WELFARE SERVICES,  Plaintiff and Respondent,  v.  R.Q.,  Defendant and Appellant. | |

R.Q. (Mother) appeals from the juvenile court's order terminating parental rights to her minor daughter, M.M., and selecting adoption as the permanent plan.  (Welf. & Inst. Code,[1] § 366.26.)  She contends the termination order must be vacated

---

[1] Further statutory references are to the Welfare and Institutions Code.

because the court failed to comply with the Indian Child Welfare Act (ICWA).  We affirm.

FACTUAL AND PROCEDURAL HISTORY

In May 2018, the juvenile court detained M.M. after Santa Barbara County Child Welfare Services (the County) showed that Mother had failed to protect M.M. and had abused her siblings.  At the detention hearing, Mother told the court that she may have Pomo ancestry.  She believed that her ancestral tribe's reservation was located in northern California.

The County initiated an ICWA inquiry the day after the hearing.  From the records in Mother's previous dependency cases it found the names, addresses, birthdates, and phone numbers of several of Mother's relatives.  Those records specified that Mother's adoptive father, S.Q., was a member of the Robinson Rancheria of Pomo Indians, and listed his enrollment number.  The records also indicated that the Robinson Rancheria had determined that Mother's other children were not eligible for enrollment in the tribe.

The County located obituaries for two of S.Q.'s half-sisters, P.T. and L.Q.  P.T.'s obituary included her dates of birth and death, and an assertion that she was the "last of the full-blood Pomo Nation of Lake County."  L.Q.'s obituary included the dates and locations of her birth and death, and said that she led her "entire" family's fight against disenrollment from the Robinson Rancheria.  It also stated that L.Q. had "Eastern Pomo" ancestry.

The County later spoke with S.Q.'s brother and sister-in-law, M.Q. and D.Q.  M.Q. said that he was a member of the Robinson Rancheria and provided his enrollment number.  He also said that his mother, M.B., had been a member of the

tribe. D.Q. said that Mother was adopted and was not eligible for enrollment in the Robinson Rancheria. The County asked if there were any additional family members who might have information regarding M.M.'s potential Indian ancestry, but M.Q. and D.Q. said that there were not.

At the June jurisdiction hearing, Mother said that the sole Indian ancestry she claimed was through her adoptive father; she did not "have any Indian blood" herself. The juvenile court told Mother that it was the tribe, not the court, that would make the final ICWA determination.

Later that month, the County filed a Notice of Child Custody Proceedings (ICWA-030). The notice identified Mother as M.M.'s biological mother, and mistakenly identified S.Q. as her biological grandfather. The notice asserted that S.Q. belonged to the Robinson Rancheria and provided his enrollment number. It did the same for M.Q. It listed M.B. and said she too belonged to the Robinson Rancheria, but did not provide her enrollment number. Attached to the notice were the obituaries for P.T. and L.Q. The County mailed copies of the notice and its attachments to Mother, the Department of the Interior, and the Robinson Rancheria's ICWA Coordinator. The cover letter to the Robinson Rancheria requested that the tribe search its records and report to the County whether M.M. was eligible for enrollment.

At the three-month interim review hearing held in October, the County told the juvenile court that no person or agency had responded to its ICWA notice, and asked the court to find that ICWA did not apply. When no one objected, the court made the requested finding. Neither Mother nor anyone else raised an ICWA issue in the proceedings that followed.

3

The juvenile court held a section 366.26 hearing in July 2020.  At the conclusion of the hearing the court found M.M. adoptable, found that the beneficial relationship exception to adoption did not apply, and terminated Mother's parental rights.

DISCUSSION

*Applicable law*

Before considering the merits of Mother's contentions, we must first determine which version of the state's ICWA statutes applies here.  In 2018, the Legislature enacted a number of changes to the statutes, including changes to the notice requirements relevant to this appeal.  (See *In re Austin J.* (2020) 47 Cal.App.5th 870, 884 (*Austin J.*).)  Those changes took effect January 1, 2019.  (*Ibid.*)  Mother argues that, because the juvenile court made its ICWA finding in October 2018—three months before the amended statutes' effective date—the former notice requirements apply.

But "ICWA and the corresponding provisions of California law impose an affirmative and continuing duty on the juvenile court to inquire whether the child is an Indian child." (*In re A.M.* (2020) 47 Cal.App.5th 303, 319 (*A.M.*).)  An interim determination that ICWA does not apply has no effect on that duty.  (*Id.* at p. 320.)  The relevant date is when the court holds the section 366.26 hearing.  (*Ibid.*)  At that date the court must be convinced, based on the circumstances that exist at that time, that ICWA does or does not apply.  (*Ibid.*)

Here, the juvenile court found ICWA inapplicable at the October 2018 review hearing, and never explicitly revisited that finding.  Nevertheless, based on the court's "affirmative and continuing duty," we presume that its July 2020 termination order "'subsumed a present determination' of ICWA's

4

inapplicability. [Citation.]" (*A.M.*, *supra*, 47 Cal.App.5th at p. 320.) Since the court made that determination well after the current version of the ICWA statutes' effective date, that version applies here. (*Id.* at p. 321.) That is not the improper retroactive application of the statutes, as Mother avers, but rather the proper application of the statutes in effect when the court made its final ICWA determination. (*Ibid.*) We thus apply them in our review of Mother's contentions.

*Information contained in the notices*

Mother contends the ICWA notices were defective because they lacked all of the pertinent information about M.M.'s relatives that was known to the County. We disagree.

If there is "reason to believe" that a child may be an Indian child, but the juvenile court does not have sufficient information to make a conclusive determination, it may order the social services agency to undertake further inquiry. (§ 224.2, subd. (e).) This includes interviewing the child's family members and contacting tribes that may have information on the child's membership status. (*Id.*, subd. (e)(2).) When contacting a tribe, the agency should "shar[e] information identified by the tribe as necessary . . . to make a membership or eligibility determination, as well as information on the current status of the child and the case." (*Id.*, subd. (e)(2)(C).)

If the inquiry establishes a "'reason to know'" that a child may be an Indian child, the social services agency must notify the relevant tribe. (*Austin J.*, *supra*, 47 Cal.App.5th at p. 884.) "The notice must include enough information for the tribe to 'conduct a meaningful review of its records to determine the child's eligibility for membership'" (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1050), including "[a]ll names known of the . . .

child's biological parents, grandparents, and great-grandparents . . . as well as their current and former addresses, birth dates, places of birth and death, tribal enrollment information of other direct lineal ancestors of the child, and any other identifying information, if known" (§ 224.3, subd. (a)(5)(C)). We review the juvenile court's finding for substantial evidence. (*In re E.W.* (2009) 170 Cal.App.4th 396, 403-404.)

On this record it does not appear that the County was required to provide notice to the Robinson Rancheria. No one told the juvenile court that M.M. was an Indian child, nor did anyone say that they had discovered information indicating that she was. (§ 224.2, subds. (d)(1), (d)(3), & (e)(1).) And during its inquiry, the County discovered records in which the Robinson Rancheria stated that M.M.'s siblings were *not* eligible for enrollment in the tribe. It thus appears that there was not "reason to believe" that M.M. may be an Indian child. (*Austin J.*, *supra*, 47 Cal.App.5th at pp. 888-889.) Accordingly, section 224.2's notice requirements would not be triggered. (*Id.* at pp. 883-884.)

But even if they were triggered, substantial evidence supports the juvenile court's implied finding that the County's notice contained all of the required information. The notice included the names of M.M.'s mother, grandfather, and great-grandmother through which she had potential Robinson Rancheria ancestry, and several great-aunts and uncles who may have shared that ancestry. It listed addresses, birth dates, and dates of death for each of these people. And it had possible tribal enrollment numbers for S.Q. and M.Q. That the notice did not also include enrollment numbers for other family members is not

6

fatal; such information must be provided only "if known." (§ 224.3, subd. (a)(5)(C).) Mother does not show that it was.

*Notice to all relevant tribes*

Alternatively, Mother contends the ICWA notices were defective because the County failed to send them to all potentially relevant Pomo tribes, including the "Pomo Nation of Lake County" and the "Eastern Pomo" that were referenced in her aunts' obituaries. (See § 224.3, subd. (a)(3)(A) [when there is "reason to know" a child may be an Indian child, notice must be sent to "[a]ll tribes of which the child may be a member or citizen"].) But the obituaries' references to the "Pomo Nation of Lake County" and "Eastern Pomo" do not appear to be references to specific tribes but rather colloquialisms for the Pomo more generally. And even if the two tribes mentioned were distinct tribes, neither is federally recognized. (See Indian Entities Recognized by and Eligible to Receive Services from the United States Bureau of Indian Affairs, 85 Fed.Reg. 5462-5467 (Jan. 30, 2020).) ICWA and its notice requirements apply only to federally recognized Indian tribes. (*In re K.P.* (2009) 175 Cal.App.4th 1, 5; see 25 U.S.C. § 1903(8) [defining "Indian tribe"].)

DISPOSITION

The juvenile court's order terminating Mother's parental rights and selecting adoption as the permanent plan, entered July 14, 2020, is affirmed.

NOT TO BE PUBLISHED.


TANGEMAN, J.

We concur:


YEGAN, Acting P. J.            PERREN, J.


7

Arthur A. Garcia, Judge

Superior Court County of Santa Barbara

_____

Aida Aslanian, under appointment by the Court of Appeal, for Defendant and Appellant.

Michael C. Ghizzoni, County Counsel, Lisa A. Rothstein, Deputy County Counsel, for Plaintiff and Respondent.