Filed 7/16/25  In re H.L. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re H.L. et al., Persons Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | E085534 |
| Plaintiff and Respondent, | (Super.Ct.Nos. J298206 & J298207) |
| v. | OPINION |
| N.S., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Cara D. Hutson, Judge.  Affirmed.

Elizabeth C. Alexander, under appointment by the Court of Appeal, for Defendant and Appellant.

Tom Bunton, County Counsel, and Helena Rho, Deputy County Counsel, for Plaintiff and Respondent.

1

The juvenile court terminated defendant and appellant N.S.'s (mother) parental rights as to H.L. (born March 2018) and E.L. (born July 2013, collectively "minors"). On appeal, mother contends the court committed reversible error in finding that plaintiff and respondent, San Bernardino County Children and Family Services (the department), complied with their duty of inquiry with respect to the Indian Child Welfare Act of 1978 (ICWA; 25 U.S.C. § 1901 et seq.) and Welfare and Intuitions Code section 224.2, subdivision (a) (Cal-ICWA).[1] We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On August 20, 2023, personnel from the department received an immediate response referral indicating that mother had driven off a ledge into a wash while intoxicated. H.L., who was in the car at the time but not in a car seat, sustained neck pain and a lump on her head. Both were hospitalized. Officers arrested mother for driving under the influence and child endangerment.

C.L. (father), who was found to be minors' presumed father in the previous dependency case, was deceased. Nonetheless, the social worker reviewed databases to locate current contact information for father; she found no phone numbers or addresses for father. The social worker "searched local county Coroner records but was unable to confirm the reported death of the presumed father."

On August 20, 2023, the department placed minors into protective custody. On August 22, 2023, the department filed section 300 juvenile dependency petitions alleging

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

that mother had an unresolved history of substance abuse (B-1), that mother had a criminal history (B-2), that mother drove a vehicle while intoxicated placing H.L. at danger (B-3),[2] that father's whereabouts and ability to care for minors was unknown (B-4 & G-6), that mother had been arrested and could not care for minors (G-5), and that parents had a history of juvenile dependency interventions (J-7 & J-8).[3] At the detention hearing on August 23, 2023, the court detained minors.

On September 8, 2023, the department filed a declaration of due diligence reflecting, "Search efforts revealed that alleged father . . . is deceased." A database indicated father died in February 2021: "Social worker was notified to request death certificate. Search is complete."

In the jurisdiction and disposition report filed on September 11, 2023, the social worker recommended the court find some of the allegations true, remove minors from mother's custody, and provide mother reunification services. The social worker met with mother, who denied any Native American ancestry. The social worker spoke with the maternal uncle and maternal step-grandmother; both denied any Native American heritage. The social worker concluded ICWA did not apply. Nevertheless, the social

---

[2] The department did not make this allegation against E.L.; thus, the remaining allegations as to E.L. were renumbered. The department did make an allegation as to E.L. under J-7 that mother drove a vehicle while intoxicated placing H.L. at danger.

[3] Mother had a recent dependency case based on concerns that she would drive under the influence of alcohol and engaged in acts of domestic violence. In that case, the juvenile court sustained the allegations; minors were returned to mother with family maintenance services after she received reunification services. The case had been closed. Mother also had a history of numerous other prior dependency interventions with several substantiated allegations involving alcohol.

worker put in the recommendations that the court find that minors "do come under the provisions of" ICWA.[4]

At the hearing on September 13, 2023, the court asked mother whether father had "any Native American or Indian Blood?"  Mother responded, "No.  He was Caucasian."  Mother completed an ICWA-020 form on the same date reflecting that she had no Native American ancestry.

At the hearing on November 22, 2023, the department requested that the B-2, B-4, G-5, G-6, and J-8 allegations as to H.L. and the B-2, B-3, G-4, G-5, and J-8 allegations as to E.L. be dismissed.  The court dismissed those allegations.  The court found the remaining allegations true, removed minors from mother's custody, and granted mother reunification services.  The court appears to have crossed out the portion of recommendations that the court find that minors "do" come under ICWA and have inserted the word "may."

In the May 6, 2024, status review report, the social worker incorrectly noted that the court had found that ICWA did not apply at the dispositional hearing.  The social worker reported, "On April 26, 2024, the mother . . . reported that she has no Native American Ancestry.  The mother reported that neither of the children have Native American Ancestry and that no members of her family have Native American Ancestry."

---

[4]  This appears to be a clerical mistake.  Subsequent indications by the social worker that the court had already ruled that minors did not come under ICWA makes it reasonably inferable that the social worker meant to recommend that the court find the minors "do not" come under ICWA.

With respect to father, the social worker noted, "On September 18, 2023, the Department received confirmation that the father . . . is deceased. On or about April 2024, the Department . . . submitted the request for the Death Certificate and [it] is pending." At the hearing on May 22, 2024, the court continued mother's reunification services.

The status review report filed September 26, 2024, reflected the social worker's recommendation to terminate mother's reunification services and set the section 366.26 hearing. The social worker, again, incorrectly noted that the court had previously found ICWA did not apply on November 22, 2023. The social worker included an updated graph of all ICWA inquiries in the case. The social worker noted, "On August 21, 2024, the mother . . . reported that she has no Native American Ancestry. The mother reported that neither of the children have Native American Ancestry and that no members of her family have Native American Ancestry." The social worker reported the maternal grandfather and maternal step-grandmother had also denied any Indian ancestry.

The social worker further reported, "As a reminder to court, on September 18, 2023, the mother . . . completed the Parent: Family Find and ICWA Inquiry form and did not identify anyone as close relatives to the children. The Department has not received any information, nor [has] anyone . . . contacted the Department to inquire about the wellbeing or to have contact with the children." "On September 18, 2023, the Department received confirmation that the father . . . is deceased. The Department has the Death Certificate on file."

In an interim review report filed on October 7, 2024, the social worker, yet again, mistakenly noted that "on November 22, 2023, the Court found that the Indian Child Welfare does not apply." On October 21, 2024, the court terminated mother's reunification services and set the section 366.26 hearing.

In a November 27, 2024, information for the court, the social worker provided an ICWA update. The social worker "was able to obtain names and contact information for [mother's] family members and the father's side of the family." Mother gave the social worker the paternal grandparents' names and said they resided in Oregon, but she did not have any contact information for them. The mother was also able to provide the names of two of father's sisters but did not have any contact information for them. Mother said of the father, "'his family is all white, I think they have Irish blood, no Native American ancestry.'" The maternal aunt, maternal uncle, maternal grandmother, and maternal aunt all denied Indian heritage. "There are no additional relatives to inquire about Indian Heritage."

At a hearing on December 9, 2024, the department requested "the Court to find that the Department has complied with the duty of inquiry, that there is no reason to know this is an Indian child, and . . . ICWA does not apply." The court responded, "So found."

In the February 5, 2025, section 366.26 report, the social worker recommended that mother's parental rights be terminated and that a permanent plan of adoption be implemented. The social worker noted, "As indicated in the Detention report dated August 23, 2023, on August 20, 2023, the mother, . . . denied Native American ancestry

6

as she has not lived on a reservation, is not a member or eligible for membership with any known Native American tribe, and has no identification or enrollment number for Native American ancestry." "[O]n September 6, 2023, the mother denied Native American ancestry. At the same hearing, the maternal uncle, . . ., and maternal step-grandmother . . . denied Native American ancestry." "[T]he Court found that . . . [ICWA] did not apply." "All the additional family members that were listed on the Family Find and ICWA inquiry form, that the parent provided were all contacted . . . and all the additional family members denied Native American ancestry."

On February 18, 2025, the court found minors adoptable and terminated mother's parental rights.

## II.  DISCUSSION

Mother contends the juvenile court failed to ensure the department complied with ICWA and Cal-ICWA. Specifically, mother maintains that the department failed to make sufficient inquiries of "the paternal grandparents, who resided in Oregon, and made no effort to contact two paternal aunts [with] information provided by . . . mother." Mother concedes, "It may ha[ve] been that these paternal relatives were not accessible, . . ." Nevertheless, she maintains "the Department was obligated to get back to the court as to the paternal relatives that were known of, including the paternal grandparents, and two paternal aunts [since] [t]here was no reporting by the Department to the juvenile court of any efforts it made to locate and inquire of any paternal relatives." We disagree.

7

"In 1978, Congress enacted the [ICWA] to 'formalize[] federal policy relating to the placement of Indian children outside the family home.' [Citation.] Under ICWA's state analogue, the California Indian Child Welfare Act (Cal-ICWA; [citation]), courts and child welfare agencies are charged with 'an affirmative and continuing duty to inquire whether a child . . . is or may be an Indian child' in dependency cases. [Citation.] Child welfare agencies discharge this state law duty by 'asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child and where the child, the parents, or Indian custodian is domiciled.' [Citation.]" (*In re Dezi C.* (2024) 16 Cal.5th 1112, 1124-1125 (*Dezi C.*), fn. omitted; accord *In re Kenneth D.* (2024) 16 Cal.5th 1087, 1099.)

"Agencies and juvenile courts have 'an affirmative and continuing duty' in every dependency proceeding to determine whether ICWA applies by inquiring whether a child is or may be an Indian child. [Citation.]" (*Dezi C.*, *supra*, 16 Cal.5th at pp. 1131-1332.) "[T]he duty to inquire 'includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child.' [Citation.] '[E]xtended family member' means 'a person who has reached the age of eighteen and who is the Indian child's grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or

8

stepparent.' [Citations.]" (*Id.* at p. 1132, fn. omitted; see *In re Kenneth D.*, *supra*, 16 Cal.5th at p. 1099, fn. 5.)

"The juvenile court's factual finding that ICWA does not apply is 'subject to reversal based on sufficiency of the evidence.' [Citation.]" (*Dezi C.*, *supra*, 16 Cal.5th at p. 1134; accord *In re Kenneth D.*, *supra*, 16 Cal.5th at p. 1101.) "[T]he juvenile court's fact-specific determination that an inquiry is adequate, proper, and duly diligent is 'a quintessentially discretionary function' [citation] subject to a deferential standard of review. [Citations.] "'On a well-developed record, the court has relatively broad discretion to determine whether the agency's inquiry was proper, adequate, and duly diligent on the specific facts of the case. However, the less developed the record, the more limited that discretion necessarily becomes."' [Citations.]" (*Dezi C.*, at p. 1141; accord *In re Kenneth D.*, at pp. 1101-1102.)

Reversal is not required where "every possible extended family member has not been asked about the child's Indian ancestry." The department is not required "'to "find" unknown relatives and others who have an interest in the child, merely to make reasonable inquiries.' The operative concept is those people who are reasonably available to help the agency with its investigation.'" (*Dezi C.*, *supra*, 16 Cal.5th at p. 1140; compare *In re Y.W.* (2021) 70 Cal.App.5th 542, 553 (*Y.W.*) [department failed its duty of inquiry where it failed to locate and inquire of the minor's biological parents "once the social worker learned of a potentially viable lead to locate them"].)

Here, both the department and the court conducted inquiries of extended family members, all of whom repeatedly denied having any Native American ancestry. Although mother eventually gave the department the names of some paternal relatives and their purported state of residence, mother was unable to provide any contact information for them. Moreover, mother stated of father, "He was Caucasian." She also said, "'his family is all white, I think they have Irish blood, no Native American ancestry.'" Unlike *Y.W.*, the social worker had no "potentially viable lead to locate" any of the paternal relatives. (*Y.W.*, *supra*, 70 Cal.App.5th at p. 553.) Substantial evidence supported the court's determination that ICWA did not apply.

We see nothing in the law to require the department to make exhaustive attempts to inquire of extended family members who have not participated in the proceedings. This is particularly true where, as here, none of the relatives of whom mother complains the department failed to sufficiently inquire were "'reasonably available.'" (*Dezi C.*, *supra*, 16 Cal.5th at p. 1140.) Moreover, there is no reason here to know, let alone reason to believe, that minor was an Indian child because repeated inquiries of extended family members all reflected no Indian ancestry. On this record, the social worker's inquiries were "'"proper, adequate, and duly diligent."'" (*Dezi C.*, *supra*, 16 Cal.5th at p. 1141; accord *In re Kenneth D.*, *supra*,16 Cal.5th at pp. 1101-1102.)

Furthermore, this court has previously held that defective ICWA notice as to one sibling is harmless when there has been good ICWA notice as to another sibling who has been found not to be an Indian child. (*In re E.W.* (2009) 170 Cal.App.4th 396, 400-403

10

["[B]ased on considerations of judicial economy, the assured futility of providing identical notice regarding [minor], and the [minor's] need for stability[,] [e]ven a conditional reversal with limited remand would be an empty formality and a waste of ever-more-scarce judicial resources."].) Here, father was alive and participated in the first dependency proceeding as to *the same* minors, and that juvenile court found that ICWA did not apply. Thus, even if there was any error, any error would be harmless.

Minors "deserve permanence and stability as soon as possible. We cannot condone delaying that permanence for an empty exercise with a preordained outcome, especially where that exercise does nothing concrete to further the purposes of ICWA." (*In re E.W.*, *supra*, 170 Cal.App.4th at p. 402.) The court acted within its "relatively broad discretion" in determining that ICWA did not apply.

### III.  DISPOSITION

The orders are affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER
Acting P. J.

We concur:

MILLER
J.

FIELDS
J.