Filed 12/31/25  In re P.J. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| In re P.J., a Person Coming Under the Juvenile Court Law. | |
| SAN JOAQUIN COUNTY HUMAN SERVICES AGENCY, | C104262 |
| Plaintiff and Respondent, | (Super. Ct. No. STKJDDP20230000211) |
| v. | |
| T.J., | |
| Defendant and Appellant. | |

Appellant T.J. (father), father of the minor P.J., appeals from the juvenile court's orders terminating parental rights and freeing the minor for adoption.  (Welf. & Inst. Code, §§ 366.26, 395.)[1]  Father claims the juvenile court and the San Joaquin County Human Services Agency (Agency) failed to comply with the inquiry and notice

---

[1]  Undesignated statutory references are to the Welfare and Institutions Code.

1

requirements of the Indian Child Welfare Act of 1978 (ICWA) (25 U.S.C. § 1901 et seq.) because the Agency failed to make proper inquiry of known relatives regarding the minor's possible Indian ancestry, and therefore the juvenile court abused its discretion when it found the ICWA did not apply. We will affirm the juvenile court's orders.

## BACKGROUND

Because the issues on appeal are limited to compliance with the ICWA, we dispense with a detailed recitation of the underlying facts and procedural history.

This family came to the attention of the Agency in June 2023 when the minor and her mother E. (mother) tested positive for amphetamine at the minor's birth. At that time, mother completed a parental notification of Indian status form (ICWA-020) indicating she had no Indian ancestry. Father also completed an ICWA-020 form indicating the paternal great-grandmother I. had Cherokee ancestry. The social worker conducted a home visit at maternal grandfather P.'s home where mother lived. Maternal grandfather provided the names of maternal grandmother R. and step great-grandmother A. as possible placements for the minor. Those two relatives were subsequently assessed for placement, as was maternal great-aunt L. Father reportedly shared a room with one of the paternal uncles in the home of paternal grandmother C.

At the June 12, 2023, detention hearing, father and mother were present along with other family members. Mother informed the juvenile court that she had Cherokee and "Blackfoot"[2] ancestry and stated maternal grandmother R., who was present, would be a good resource for ancestral information. The court asked maternal grandmother R. and all other maternal relatives present to provide the social worker with any ICWA-related

---

[2] "[T]here is frequently confusion between the Blackfeet tribe, which is federally recognized, and the related Blackfoot tribe, which is found in Canada and thus not entitled to notice of dependency proceedings. When Blackfoot heritage is claimed, part of the Agency's duty of inquiry is to clarify whether the parent is actually claiming Blackfoot or Blackfeet heritage . . . ." (*In re L.S.* (2014) 230 Cal.App.4th 1183, 1198.)

information. Maternal grandmother R. indicated the maternal relatives were from the Oklahoma and Tennessee mountains. The court also inquired of father, who stated paternal great-grandmother I. was "full-blooded Blackfoot Indian," but he did not have any information regarding his father's side of the family. Father also stated he only recently learned of his Native American ancestry from paternal grandmother C. The court instructed father to provide the social worker with paternal grandmother C.'s contact information and ordered the minor detained.

The juvenile court took dependency jurisdiction over the minor in July 2023. The minor was placed in the care of maternal grandmother R.

The August 2023 disposition report stated there was a claim of Indian ancestry but because there was insufficient information to have reason to know the minor was an Indian child, the Agency would provide notices of child custody proceedings for Indian child forms (ICWA-030) to the Bureau of Indian Affairs (BIA) and all federally recognized Cherokee and Blackfeet tribes based on the information previously obtained from the parents. In particular, the report noted both parents indicated they had Indian heritage; mother stated she had Cherokee and "Blackfoot" heritage originating from tribes in the Oklahoma and Tennessee mountains; mother did not have an enrollment number with either tribe; and father stated he had "Blackfoot" heritage and that the paternal great-grandmother I. would know more about the family's history. The report identified a number of the minor's extended relatives, including maternal aunts H. and A., maternal uncles G. and R., maternal grandmother R., maternal grandfather P., maternal great-grandmother A., paternal grandmother C., paternal grandfather Cl., Sr., and paternal uncles Cl., Jr., C., P., and K. The Agency attached a copy of a status review report in a related dependency case in Merced County involving father's other child (the minor's half sibling O.) wherein it was determined that the ICWA did not apply to that child.

In August 2023, the parents filed their respective revised ICWA-020 forms. Both parents claimed they had possible Cherokee and "Blackfoot" heritage.

In October 2023, DNA test results established father's paternity and the juvenile court found him to be the minor's biological father. The Agency filed ICWA-030 forms it sent to the BIA and the four tribes (Cherokee Nation, Blackfeet Tribe of the Blackfeet Indian Reservation of Montana, Eastern Band of Cherokee Indians, and United Keetoowah Band of Cherokee Indians in Oklahoma) containing detailed information regarding mother, father, maternal grandmother R., paternal grandmother C., maternal grandfather P., paternal great-grandmother I., paternal great-grandfather D., and paternal great-grandfather Cl., and limited information regarding paternal grandfather Cl., Sr., paternal great-grandmother J., maternal great-grandfather P., and maternal great-grandfather J.

In January 2024, the Agency filed a declaration stating it sent ICWA notices to the BIA and the four tribes and had received responses from three of the four tribes indicating the minor was not an Indian child for purposes of the ICWA. The Agency stated it had not received a response from either the Blackfeet Tribe of the Blackfeet Indian Reservation of Montana or the BIA in over 60 days since the date the notices were sent.

In February 2024, the Agency reported there was a claim of Native American ancestry but there was insufficient information to form a reason to know the minor was an Indian child for purposes of the ICWA. The Agency further reported it received letters from the Eastern Band of Cherokee Indians, the Cherokee Nation, the United Keetoowah Band of Cherokee Indians, and the Blackfeet Tribe of the Blackfeet Indian Reservation of Montana, all of which stated the minor was not considered an Indian child for purposes of the ICWA. The Agency sent letters of inquiry of Indian heritage and ICWA-020 forms to maternal grandmother R., maternal grandfather P., Jr., and maternal great-grandfather P., Sr., as a result of a Lexis Nexis search completed in February 2024.

In June 2024, the Agency reported that it searched both parent's names on Lexis Nexis, obtained 104 relative names and addresses, and sent ICWA-020 notices and an

ICWA inquiry letter to all 104 relatives. ICWA-020 forms were completed by maternal relatives N.K., O.J., and N.J., indicating no known Indian ancestry. Maternal grandfather P. completed an ICWA-020 form indicating possible Indian ancestry with the Cherokee and "Blackfoot" tribes. The report noted that no responses were received from any of the other 104 relatives.

The Agency's November and December 2024 and April 2025 status review reports reiterated all previously reported attempts to identify and locate the minor's extended family members for ICWA inquiry, and its communications to and from the BIA and all relevant tribes. The November 2024 report stated the ICWA "does or may apply."

The June 2025 selection and implementation report reiterated all previously reported ICWA inquiry efforts and added no new or additional information in that regard. The report concluded there was no reason to believe the minor was an Indian child within the meaning of the ICWA.

The Agency's July 2025 ICWA compliance report detailed the previously reported inquiry efforts and added that, between June and September 2024, the Agency received ICWA inquiry "return to sender" notices for 17 of the 104 relatives and had not received responses from any of the other relatives. The Agency recommended the court find the minor was *not* an Indian child within the meaning of the ICWA.

On July 17, 2025, the Agency informed the juvenile court that the social worker not only inquired of paternal grandmother C. about possible Native American ancestry, but also asked paternal grandmother C. if she could provide the names and contact information of other relatives who had information about Native American ancestry, to which paternal grandmother C. responded, "No." Based thereon and on the ICWA compliance report previously filed, the court found the ICWA did not apply and that the Agency completed its due diligence in attempting to determine whether the minor was an Indian child. The court thereafter terminated parental rights and ordered adoption as the permanent plan.

## DISCUSSION

Father contends the juvenile court failed to ensure the Agency complied with its mandatory duty of ICWA inquiry and therefore the court's finding that the ICWA does not apply is not supported by the evidence. Specifically, father claims the Agency failed to "collect crucial information" from known relatives and failed to provide enough information in the ICWA-030 notices for the relevant tribes to determine whether the minor was an Indian child. The claim lacks merit.

Child welfare agencies and juvenile courts "have 'an affirmative and continuing duty' in every dependency proceeding to determine whether ICWA applies by inquiring whether a child is or may be an Indian child. (§ 224.2, subd. (a).) This 'duty to inquire begins with the initial contact, including, but not limited to, asking the party reporting child abuse or neglect whether the party has any information that the child may be an Indian child.' " (*In re Dezi C.* (2024) 16 Cal.5th 1112, 1131-1132.) The duty of inquiry "includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child and where the child, the parents, or Indian custodian is domiciled." (§ 224.2, subd. (b)(2).) The duty of inquiry " 'continues throughout the dependency proceedings.' " (*In re J.C.* (2022) 77 Cal.App.5th 70, 77.)

A juvenile court must make a finding whether the ICWA applies. (*H.A. v. Superior Court* (2024) 101 Cal.App.5th 956, 965-966; *In re E.W.* (2009) 170 Cal.App.4th 396, 403.) A juvenile court's finding that the ICWA does not apply is "subject to reversal based on sufficiency of the evidence." (§ 224.2, subd. (i)(2).) Its "fact-specific determination that an inquiry is adequate, proper, and duly diligent is 'a quintessentially discretionary function' [citation] subject to a deferential standard of review." (*In re Dezi C.*, *supra*, 16 Cal.5th at p. 1141.)

6

Here, both parents and some relatives were present at the June 12, 2023, detention hearing. The juvenile court asked all those present to provide the social worker with any ICWA-related information. The Agency inquired of and obtained ICWA-020 forms from both parents and learned that the minor might have Cherokee and Blackfeet ancestry on both sides of the family. Father indicated the Cherokee ancestry flowed through paternal great-grandmother I., who was "full-blooded Blackfoot Indian," and stated he learned of his Indian ancestry from paternal grandmother C. Mother indicated a good resource for ancestral information would be maternal grandmother R., who was present and who told the juvenile court the maternal relatives were from the Oklahoma and Tennessee mountains. From that information, the Agency identified a number of maternal and paternal relatives, including paternal great-grandmothers I. and J. (both deceased) and paternal great-grandfathers D. and C., Sr. (both deceased), and provided all known information to the relevant Cherokee and Blackfeet tribes. The Agency ultimately identified and sent letters of inquiry and ICWA-020 forms to 104 maternal and paternal relatives, only a handful of whom responded. Those relatives who responded indicated having no known Indian ancestry.

Father claims the Agency had regular and frequent contact with maternal grandmother R. and had ample opportunity to ask about her family history and obtain contact information for maternal great-grandmother A., but either never did or failed to record having done so. Father also claims the Agency spoke with maternal aunt H., paternal grandmother C., and maternal grandfather P., Jr., but made no note of making ICWA inquiry of any of those relatives. To the contrary, the juvenile court spoke directly with maternal grandmother R. about her ancestry and directed her to provide the Agency with any ICWA-related information. Thereafter, the Agency sent letters of inquiry and ICWA-020 forms to maternal grandmother R. (the person mother claimed was the best resource for ancestral information), paternal grandmother C., and maternal grandfather P., Jr., to obtain information that might assist their ICWA inquiry. "[The Agency's] initial

7

duty to inquire includes asking the . . . extended family members . . . whether the child is, or may be, an Indian child.  (§ 224.2, subd. (b).)"  (*In re D.F.* (2020) 55 Cal.App.5th 558, 566.)  The ICWA-020 form sent to the relatives asked, among other things, whether the individual or the minor is or may be a member of or eligible for membership in a federally recognized Indian tribe, and whether the individual's parents, grandparents, or other lineal ancestors is or was a member of a federally recognized Indian tribe.  The ICWA-020 forms documented the Agency's fulfillment of its continuing duty of inquiry.

We reject father's claim that the Agency failed its continuing duty to obtain "more information" from him, mother, or any of the known relatives.  Again, both parents and certain relatives including maternal grandmother R. were present at the detention hearing when the juvenile court stated, "Any information that you have and you can provide to the social worker would be very helpful, I think.  Any contact information and if any other relatives here have any information on any Native-American ancestry or connections, please provide that to the social worker."  Under that directive, the parents and any relatives present were compelled to provide the Agency with information pertinent to its ICWA inquiry.

As for the rest of the 104 known relatives, the Agency took reasonable steps to contact each of those individuals and was under no compulsion to attempt repeated contact where prior attempts had already failed.  The law does not require the court or the agency " 'to cast about' for investigative leads.  [Citation.]  There is no need for further inquiry if no one has offered information that would give the court or [the agency] reason to believe that a child might be an Indian child.  This includes circumstances where parents 'fail[] to provide any information requiring followup' [citations], or if the persons who might have additional information are deceased [citation], or refuse to talk to [the agency]."  (*In re A.M.* (2020) 47 Cal.App.5th 303, 323, disapproved on other grounds in *In re Dezi C.*, *supra*, 16 Cal.5th at p. 1152, fn. 18.)  In any event, the Agency informed the court that, just prior to the selection and implementation hearing, mother's inquiry of

paternal grandmother C. regarding her knowledge of possible Indian heritage and contact information for other relatives with such knowledge yielded no results.

Finally, father claims the ICWA-020 forms sent by the Agency to the Indian tribes were incomplete and inadequate under section 224.2, subdivisions (d) and (f), and omitted vital information in that (1) there was no information provided for either of the maternal great-grandmothers from whom Indian ancestry possibly derived, (2) there was no indication whether the names listed for female relatives were married names or maiden names, (3) father spelled paternal great-grandmother's name one way on his ICWA-020 form and another way in court and both spellings were not included in the notices, and (4) father's middle name was spelled one way in the record and another way on the ICWA-020 notice and both spellings were not included in the notices. The premise of father's argument is flawed.

The ICWA "noticing" requirement is triggered only when there is "reason to know" the minor is an Indian child. (§§ 224.2, subds. (d) & (f), 224.3.) Here, the juvenile court never found there was a reason to know the minor was an Indian child. Based on the information provided at the detention hearing and in ICWA-020 forms, the Agency concluded there was a reason to believe the minor may be an Indian child thus requiring further inquiry, including "[i]nterviewing the parents, Indian custodian, and extended family members" to gather the required information to ascertain whether there was a reason to know. (§ 224.2, subd. (e)(2)(A).) In this regard, contact with the relevant tribes "shall, at a minimum, include telephone, facsimile, or electronic mail contact" to the tribe's designated agent and "shall include sharing information identified by the tribe as necessary for the tribe to make a membership or citizenship eligibility determination . . . ." (§ 224.2, subd. (e)(2)(C).)

Here, as is often the case, the Agency utilized the ICWA-030 form as their means of contacting and inquiring of the Cherokee and Blackfeet tribes and sharing information regarding the minor's extended family members. Short of providing inaccurate or

9

misleading information, use of the ICWA-030 form is an appropriate means of "interviewing" the tribes and "sharing information" for purposes of section 224.2, subdivision (e). Under these circumstances, such contact was not subject to the same notice requirements as those set forth in section 224.2, subdivisions (d) and (f). As previously discussed, the Agency provided a significant amount of information regarding the minor's extended family members, including both maternal and paternal grandparents. All four of the tribes responded to the Agency's inquiry stating the minor was not considered an Indian child for purposes of the ICWA. There is nothing in the record to suggest the tribes required or requested additional information before making their respective determinations.

We reject father's claim that the juvenile court failed to ensure the Agency completed a proper ICWA inquiry. " 'On a well-developed record, the court has relatively broad discretion to determine whether the agency's inquiry was proper, adequate, and duly diligent on the specific facts of the case.' " (*In re Kenneth D*. (2024) 16 Cal.5th 1087, 1101-1102.) Here, the record contained the Agency's July 2025 ICWA compliance report detailing all the efforts undertaken by the Agency to locate and inquire of the minor's maternal and paternal relatives and to contact and inquire of the BIA and the relevant Indian tribes, the responses received, and the Agency's continuing efforts. Based on the ICWA compliance report and information provided by the Agency, the court found the ICWA did not apply and that the Agency completed its due diligence in attempting to determine whether the minor was an Indian child. On this record, the court's exercise of its discretion was proper.

10

**DISPOSITION**

The juvenile court's orders are affirmed.

/s/_____

WISEMAN, J.*

We concur:

/s/_____

DUARTE, Acting P. J.

/s/_____

MESIWALA, J.

_____

* Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.