Filed 4/28/26  In re C.K. CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re C.K., a Person Coming Under the Juvenile Court Law. | B345012 (Los Angeles County Super. Ct. No. 22CCJP01089B) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. CH.K., Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Juan M. Valles, Judge.  Affirmed.

Karriem Baker, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Kimberly Roura, Deputy County Counsel, for Plaintiff and Respondent.

\* \* \* \* \* \*

Ch.K. (mother) appeals from an order granting maternal grandmother (MGM) legal guardianship of C.K. (born April 2014) at a hearing conducted pursuant to Welfare and Institutions Code section 366.26.[1]  Mother's sole contention on appeal is the juvenile court and the Los Angeles County Department of Children and Family Services (DCFS) failed to conduct an adequate inquiry pursuant to the Indian Child Welfare Act of 1978 and related California statutes (25 U.S.C. § 1901 et seq.; Welf. & Inst. Code, § 224 et seq.) (ICWA).  For the reasons set forth below, we affirm the order of the juvenile court.

## COMBINED FACTUAL AND PROCEDURAL BACKGROUND RELEVANT TO ICWA

**The family**

Mother has two children, J.K. (born September 2009) and C.K.[2]  At the time the proceedings were initiated, J.K. and C.K. were living in California with mother.  Jonathan K. (father) was living in Michigan with his girlfriend and her four children.[3]

The family had a history with child protective services in Michigan, including six referrals between January 2016 and June

---

[1]  All further undesignated statutory references are to the Welfare and Institutions Code.

[2]  J.K. is not a subject of this appeal.

[3]  Father is not a party to this appeal.

2

2017. The family also had six prior referrals in Los Angeles County, including allegations of general neglect, excessive drinking by mother, physical and emotional abuse of the children, mother leaving the children unsupervised for long periods of time, domestic violence between mother's boyfriend and mother in the children's presence, and a violent altercation among mother, a maternal aunt who was seven months pregnant, and MGM.

**Detention, petitions and jurisdiction**

On February 28, 2022, DCFS received a referral alleging mother drank alcohol daily, smoked marijuana in front of C.K. and left the child alone or with homeless people. The caller further alleged mother drinks and drives and does not provide for C.K.'s basic needs.

Following investigation into the allegations, on March 17, 2022, the juvenile court authorized removal of the children from mother pursuant to a protective custody warrant. The children were detained with MGM.

On March 23, 2022, DCFS filed a section 300 petition alleging mother physically abused C.K. and abused alcohol and marijuana, subjecting the children to risk of harm.

On March 29, 2022, the juvenile court detained both children from their parents.

On April 13, 2022, DCFS filed a first amended section 300 petition adding allegations involving father.

The adjudication on the amended petition took place on April 25, 2022. After hearing testimony and arguments, the juvenile court sustained the amended petition, striking the allegations pertaining to father.

Prior to the disposition hearing, DCFS filed a petition pursuant to section 342 containing additional allegations

3

concerning father.  On August 26, 2022, the juvenile court sustained the section 342 petition.  The children were detained from the parents and suitably placed with MGM, with reunification services for both parents.

**ICWA investigation**

DCFS inquired of mother and father on March 1 and 2, 2022, respectively, about any possible Indian ancestry.  Mother and father each denied having any Indian ancestry.

MGM said she had five daughters, including one named Patience.  MGM denied any American Indian heritage.

DCFS spoke with maternal aunt Dorothy G. and maternal uncle Navarre G. about case issues but did not question them about ICWA.

During Michigan investigations in 2017, mother and father each denied the children were eligible for membership in any Indian tribe.

On March 25 and 28, 2022, respectively, father and mother filed ICWA-020 forms indicating none of the possible grounds for ICWA applied.

At the detention hearing on March 29, 2022, the juvenile court orally confirmed the parents' responses on the ICWA forms with each parent.  The court instructed the parents, "although you have indicated that you have no knowledge of any Indian ancestry, please, inquire of all your relatives.  And if you learn that there's a possibility of Indian ancestry, if you can provide that information to the social worker and to your lawyer so that [DCFS] can make contact and do further investigation with respect to possible Indian ancestry."  Both parents responded affirmatively to the court's instruction.  The court found ICWA did not apply.

DCFS again inquired of mother and father on April 11 and 12, 2022, respectively, and each denied having any American Indian heritage.

Father reported he was an only child, and his father was addicted to heroin and had been in and out of jail. Mother said her father moved out of state before her birth, and she had only sporadic contact with him. She had five siblings.

J.K. testified at a hearing on April 27, 2022, and reported that "two aunties" of his also lived with the children in MGM's home.

On September 26, 2022, DCFS spoke to maternal aunt Promise and asked if there was any American Indian heritage in the family. Promise denied knowledge of American Indian ancestry.

On March 6, 2024, DCFS inquired of the paternal grandmother as to whether there was any American Indian ancestry in the family. Paternal grandmother denied any American Indian ancestry.

The juvenile court inquired of mother again on May 29, 2024, and she denied any American Indian heritage.

The minute orders for the review hearings on March 19, April 24, June 20, August 20, and September 25, 2024, indicate the juvenile court found ICWA did not apply. The court indicated it had reviewed the file for ICWA and found it inapplicable. The court continued to find ICWA did not apply on October 3, October 16, and November 20, 2024.

At the section 366.26 permanency planning hearing on March 5, 2025, the juvenile court found ICWA not applicable.

On March 19, 2025, mother appealed from the juvenile court's order at the section 366.26 hearing appointing MGM as C.K.'s legal guardian.

**DISCUSSION**

## I.    Applicable law and standard of review

"ICWA reflects a congressional determination to protect Indian children and to promote the stability and security of Indian tribes and families by establishing minimum federal standards that a state court, except in emergencies, must follow before removing an Indian child from his or her family."  (*In re Austin J.* (2020) 47 Cal.App.5th 870, 881, disapproved on other grounds in *In re Dezi C.* (2024) 16 Cal.5th 1112, 1152, fn. 18 (*Dezi C.*).)

ICWA and corresponding statutes that our Legislature enacted to implement ICWA assign the juvenile court and DCFS "three distinct duties" aimed at assessing whether a child in a dependency action is an "Indian child," and hence a child who should not be separated from his or her tribal family through adoption or foster care placement.  (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1052.)  First, the statute imposes a duty of inquiry to ask all involved persons whether the child may be an Indian child.  If that initial inquiry creates a reason to believe the child is an Indian child, the agency must make further inquiry regarding the possible Indian status of the child.  Finally, if that further inquiry results in a reason to know the child is an Indian child, then the formal notice requirements of section 224.3 apply. (*D.S.*, at p. 1052.)

Under California state law, DCFS and the juvenile court "have an affirmative and continuing duty to inquire" into whether a dependent child "is or may be an Indian child." (§ 224.2, subd. (a).)  This includes DCFS making an initial inquiry, which includes asking the child, parents, extended family members, and anyone else that has an interest in the child

6

whether the child is, or may be, an Indian child. (§ 224.2, subd. (b).) "[E]xtended family member[s]" are defined as the child's "grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent." (25 U.S.C. § 1903(2); see § 224.1, subd. (c).)

Federal regulations require the juvenile court to "ask each participant … whether the participant knows or has reason to know that the child is an Indian child. The inquiry is made at the commencement of the proceeding and all responses should be on the record." (25 C.F.R. § 23.107(a); see Welf. & Inst. Code, § 224.2, subd. (c) [similar state law requirement].)

A juvenile court's findings relating to ICWA notice and inquiry issues are reviewed for substantial evidence. (*In re E.W.* (2009) 170 Cal.App.4th 396, 404.) When a child welfare agency conducts an inadequate ICWA inquiry, and the record is thus underdeveloped as to what information might exist about a child's Indian ancestry, a harmless error analysis is not feasible. (*Dezi C., supra*, 16 Cal.5th at p. 1126.) However, "the juvenile court's fact-specific determination that an inquiry is adequate, proper, and duly diligent is 'a quintessentially discretionary function' [citation] subject to a deferential standard of review." (*Id.* at p. 1141.) ""On a well-developed record, the court has relatively broad discretion to determine whether the agency's inquiry was proper, adequate, and duly diligent on the specific facts of the case."" (*Ibid.*)

The *Dezi C.* court made it clear that reversal is not required "in all cases in which every possible extended family member has not been asked about the child's Indian ancestry." (*Dezi C., supra*, 16 Cal.5th at p. 1140.) Instead, ICWA requires reasonable inquiries of individuals who are reasonably available. (*Dezi C.*, at p. 1140.) The court emphasized that "'the obligation is only one

7

of inquiry and not an absolute duty to ascertain or refute Native American ancestry.'" (*Id.* at p. 1143.)

## II. Substantial evidence supports the juvenile court's ICWA finding

Mother argues DCFS's initial inquiry was insufficient in this case. Specifically, mother argues no social worker questioned the child's extended family members maternal aunt Dorothy G. and maternal uncle Navarre G. about possible Indian ancestry, despite these relatives being readily available. Mother contends this is a violation of section 224.2, subdivision (b). A social worker spoke to both Dorothy G. and Navarre G. about the petition's allegations but failed to ask these two individuals whether they knew about C.K.'s possible Indian ancestry or knew maternal grandfather's whereabouts to determine whether he had any pertinent information. Mother contends based on these failures, the juvenile court's finding that DCFS's initial inquiry was adequate lacked sufficient evidence, and remand is necessary for DCFS and the juvenile court to conduct a proper inquiry. (Citing *Dezi C., supra*, 16 Cal.5th at pp. 1134, 1147—1148.)

We conclude the record supports the juvenile court's ICWA finding in this matter. DCFS inquired of mother, father, MGM, paternal grandmother, and maternal aunt Promise, all of whom denied any Indian ancestry. The testimony of these individuals constitutes credible, substantial evidence supporting the juvenile court's finding that ICWA does not apply to C.K.

Mother and father repeatedly denied Indian ancestry, both in Michigan proceedings and during this proceeding. Mother and father provided their responses under penalty of perjury on ICWA-2020 forms and orally in court when asked by the juvenile court.

8

DCFS also inquired of MGM and maternal aunt Promise, both of whom denied any Indian ancestry. Maternal grandfather was not readily available, as mother indicated she had only sporadic contact with him during her life. DCFS had no obligation to "'find" [him], merely to make reasonable inquiries'" into the child's potential Indian ancestry. (*Dezi C., supra*, 16 Cal.5th at p. 1140.)

Mother is correct that, early in the investigation, DCFS had contact with maternal aunt Dorothy G. and maternal uncle Navarre G., and there is no record that DCFS inquired of these two individuals whether C.K. potentially had any Indian heritage. However, this oversight does not undermine the substantial evidence in this case supporting the juvenile court's finding that ICWA does not apply. The repeated denials of mother, and the denials of MGM and maternal aunt Promise are sufficient to support the juvenile court's determination that no relevant Indian heritage existed on the maternal side.[4] There is no reason to suspect that mother's siblings had information as to Indian heritage that was not available to mother, Promise or MGM.

Mother cites *In re J.C.* (2022) 77 Cal.App.5th 70 in support of her argument that DCFS's failure to interview the two maternal relatives rendered the ICWA inquiry insufficient. In *J.C.*, "The Department did not fulfill its duty to conduct an adequate inquiry into whether J.C. may be an Indian child because it did not ask any extended family members—some of whom were readily available—whether J.C. had any possible Indian ancestry." (*Id.* at p. 78.) The department's failure in *J.C.*

_____

[4] Mother does not challenge the sufficiency of the ICWA inquiry on the child's paternal side.

9

to ask the children's "extended relatives about their possible Indian ancestry violated the express mandate of section 224.2, subdivision (b)." (*Id.* at p. 79.) Here, in contrast to *J.C.*, DCFS did ask extended family members about possible Indian ancestry. Substantial evidence supports the juvenile court's determination that the inquiry was sufficient.

Mother also cites *In re Antonio R.* (2022) 76 Cal.App.5th 421. In *Antonio R.,* the department failed to inquire of any maternal extended family members regarding Antonio's possible Indian ancestry, despite these relatives' availability. (*Id.* at p. 431.) Although mother, father, and paternal great-grandmother denied Indian ancestry, the inquiry was insufficient because "the Department never interviewed any extended family members on the maternal side regarding Antonio's possible Indian ancestry." (*Id.* at p. 432.) Here, DCFS interviewed extended family on both sides of the family.

*In re Y.W.* (2021) 70 Cal.App.5th 542 is similarly distinguishable. There, the department did not make meaningful efforts to locate the mother's biological parents, who were extended family members as defined by ICWA. Although the department initially had no way to contact the mother's biological parents, "once the social worker learned of a potentially viable lead to locate them, she made no effort to pursue it." (*Y.W.*, at p. 553.) In the matter before us, reasonably available grandparents on both sides of the family were interviewed.

*In re C.L.* (2025) 116 Cal.App.5th 53 is applicable. In *C.L.*, mother argued the juvenile court erred in finding DCFS's ICWA inquiry adequate because the record did not reflect the agency asked a maternal uncle about the children's possible Indian ancestry. (*Id.* at p. 67.) The *C.L.* court disagreed, in part because "DCFS … made inquiries of all available extended family

10

members in the older generations," a strategy that addressed "the realities of generational loss of information that may have prevented the parents from having accurate information about their potential Native American ancestry." (*Id.* at p. 70.) The *C.L.* court noted there was no indication the maternal uncle would have more information than his own mother, the maternal grandmother, as to whether the children may be Indian children. (*Ibid.*; see also *In re C.R.* (2025) 112 Cal.App.5th 793, 802 ["The court also reasonably could find mother's sister (maternal aunt) would not have had any more information about the family's potential Indian ancestry than their own mother (maternal grandmother) had."].) Similarly, here, there is no reason to believe a maternal aunt and uncle would have more information than their own mother, MGM.

Mother expresses concern about the credibility of DCFS's report that maternal aunt Promise denied Indian ancestry. Mother argues the social worker did not provide Promise's last name or contact information, and the declaration that C.K. had no Indian ancestry was the only statement DCFS took from Promise during the proceedings. Mother argues these "irregularities" undermine the declaration from Promise.

Under the substantial evidence standard of review, we determine if substantial evidence, contradicted or uncontradicted, supports the juvenile court's findings. (*In re I.J.* (2013) 56 Cal.4th 766, 773.) "'"In making this determination, we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court."'" (*Ibid.*) Under this standard, we are not permitted to reject the testimony of Promise due to the alleged irregularities

11

mother describes. Instead, it is within the province of the juvenile court to address such issues in the first instance. We therefore decline to disturb the juvenile court's ruling on this ground.

The juvenile court did not err in finding DCFS's inquiry was reasonable and adequate under the circumstances of this case.

## DISPOSITION

The order is affirmed.

CHAVEZ, Acting P. J.

We concur:

RICHARDSON, J.

GOORVITCH, J.*

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.